THE SIXTY-SEVEN SOUTH MUNN, INCORPORATED, A COR-
PORATION, PROSECUTOR, v. BOARD OF PUBLIC
UTILITY COMMISSIONERS OF NEW JERSEY AND PUB-
LIC SERVICE ELECTRIC AND GAS COMPANY, RE-
SPONDENTS.

Argued May 3, 1929—Decided November 14, 1929.

For the prosecutor, *Osborne, Cornish & Scheck* and *Merritt
Lane.*

For the board of public utility commissioners, *John O.
Bigelow.*

For the Public Service Electric and Gas Company, *Wil-
liam H. Speer.*

The opinion of the court was delivered by

CASE, J.   This case comes up on writ of *certiorari* issued
at the instance of the Sixty-seven South Munn, Incorporated,
the owner of an apartment house, to review an order made
by the board of public utility commissioners, in effect, re-

fusing to direct the Public Service Electric and Gas Company to deliver electricity at the prosecutor's apartment house to a master meter at wholesale rates to be redistributed and resold through the agency of the Meter Service Corporation to the respective tenants of the property. The real issue is whether the Public Service Electric and Gas Company is to be compelled, contrary to its own policy and against the order of the public utility commission, to sell at wholesale rates electric current to be remetered and resold at retail to the ultimate consumer by either the landlord or its agent.

Seventeen points are argued by the prosecutor in its main and supplemental briefs. For the purposes of this discussion these points will be thus consolidated:

1. Electric current is property, a commodity, and the owner thereof may use the same as he will, subject only to the lawful exercise of the police power.

2. The owner of an apartment house, being also the owner of the commodity known as electric current, may contract as he will with respect to that commodity and any effort on the part of either the state or any agency of the state, such as the board of public utility commissioners or otherwise, to interfere with such contractual rights is an impairment of the obligation of contracts and an interference with his property rights and therefore unconstitutional.

3. The legislature of the State of New Jersey has not authorized the board of public utility commissioners to control the owner of an apartment house in the redistribution and resale of electric current inasmuch as such owner is not a public utility.

4. The owner is a customer and is entitled as a matter of right to receive current for resale to its tenants and the refusal of the electric company to supply the current is unjust, discriminatory and unreasonable; and the refusal of the board to compel the company to supply the current is a violation of its obligation under the utility law.

Applying these contentions, the prosecutor claims that it is entitled as of right to be supplied at its master meter with

electricity at wholesale rates, which electricity it may then redistribute and resell to its tenants at such rate as it may arrange with them and that the function of installing and owning the sub-meters, checking the current used, billing the tenants for the same, collecting from the tenants for the current used, and remitting to the owner, shall be delegated to a third party, namely, the Meter Corporation of New Jersey, which corporation, after calculating the expenses, is to divide the profits with the owner. The owner calls the meter company its agent, and for present purposes the relationship will be considered one of agency.

It is an accepted proposition that electric current is property, and it is admitted for the purposes of this case that it is a commodity; and it may be assumed that the owner of an apartment house, having also become the owner of electric current, may, unless in its activities it becomes a utility, resell and redistribute without being under the control of the board of public utility commissioners, and without limitations on its right of resale, except such conditions as may have been lawfully imposed in the transaction by which title to the commodity was acquired. It frequently occurs that the purchaser of property, either real or personal, finds himself restricted in the use or disposition of the same by the terms under which it was acquired. Likewise it is possible for the owner of electric current to be limited in the disposition thereof by restrictions lawfully imposed as an incident of the sale to him. The prosecutor's difficulty, so far as point one as set out above is concerned, is that he is not yet the owner, either with or without restrictions, of the current that he wishes to sell.

With respect to the proposition contained in point two above: We do not understand how the constitutional provision with respect to the protection of private property is violated when the prosecutor has not acquired title to the property and has no right as yet in the property. If he has a right, it is the right to have property sold to him, which is a very different proposition and hardly within the purview of that constitutional provision. Neither do we understand

how the refusal of the electric company to sell its current to the prosecutor, or the refusal of the board of public utility commissioners to direct such sale to be made, constitutes a violation of any contract made between the prosecutor and the prosecutor's tenants. If the prosecutor has contracted to sell that which it does not own and for any reason is unable to procure the subject-matter of the sale in order to make delivery, that is its misfortune but not necessarily an impairment of its right to contract. A may contract with B whereby A undertakes to sell to B, and B undertakes to buy from A the property which belongs to C, and if A is able to procure the property and make delivery thereof all is well; but the refusal of C to convey can scarcely be called an impairment of A's right to contract, nor, indeed, a violation of any contractual rights.

As to the third point: The board of public utility commissioners does not, by its order, undertake to control the operations of the prosecutors in selling to its tenants any electric current which it may become possessed of or which it may itself manufacture so long as the prosecutor is able to perform such functions without contact either with a public utility or the commodity sold by such public utility. The prosecutor is not a public utility and the meter company is not a public utility, and these parties, either as principal and agent or otherwise, may sell and distribute electric current without interference by the board of public utility commissioners so long as there is no effort on the part of the prosecutor or the meter company to invade the sphere within which manifestly the board of public utility commissioners does have power.

It seems that the controversy resolves itself into the matters contained within point four.

It should be noted that since all parties to the cause concede and base their contentions upon the proposition that electric current is property, it must necessarily follow that the board has general supervision and regulation of, jurisdiction and control over the same if and so long as it is in the ownership of the utility; paragraph 15 of the act con-

cerning public utilities (*Pamph. L.* 1911, *p.* 374 (at *p.* 376); *Atlantic Coast Electric Railway Co.* v. *Public Utility Board,* 92 *N. J. L.* 175); and that the board has power to fix just and reasonable classifications, practices and service to be furnished with respect thereto. Utilities act, *supra,* paragraph 16, e. We know of no inherent right in the prosecutor by virtue of which it may compel the sale and delivery by the respondent of the latter's product. The State of New Jersey, through governmental channels, has granted certain franchises and incidental monopolies to the respondent, as a consequence of which the state has subjected the respondent to certain duties, obligations and responsibilities, conspicuously to general supervision and control exercised by the board of public utility commissioners. For the efficient administration of this governmental scheme it is apparent that not only the utility, but also the persons whom the utility serves, and, indeed, the general public, are subject, within jurisdictional limitations to the directions of the board. A tolerance by the board of discriminatory and unreasonable practices on the part of the utility, or the promulgation by the board of orders that in themselves are discriminatory or unreasonable, would be an abuse of power that this court could, and would, correct. But, if the disputed practice is applied generally, that is to say, if the utility uniformly and as a matter of policy declines to sell at wholesale to a retailer for redistribution and resale by the latter to the consumer at retail rates, we find nothing discriminatory in the practice. No prospective consumer is denied electric current; the question involves merely the manner and personnel of delivery. Neither does it seem to be an unreasonable or unlawful exercise of power on the part of the commission to refuse to direct the utility to sell under the circumstances. This view has in mind not merely the business of the utility but also the public welfare. *Hunter* v. *Public Utility Commissioners,* 1 *N. J. Mis. R.* 408. If the utility should be compelled to submit to this practice, it is conceivable that the meter company, or some like concern, could become a very real competitor. The meter company could take each square block as a

unit of operation, and, by keeping its paraphernalia off the public streets, refrain from becoming a utility, keep out of the control of the board of public utility commissioners, take its power through a master meter somewhere in the square and compete with the utility for sale and delivery to the various users within the block. It might or might not develop that the distributing agency was dishonest and irresponsible; that the consumers' meters were inaccurate; that the rates were unfair; that the service was faulty. No matter what the abuse neither the individual consumer nor the general public could obtain redress from the board. In the single case at bar the public concern is slight; but a ruling may be far reaching. The board of public utility commissioners determined that the practice in question is not in the public interest. We consider that the board acted quite within its lawful discretion in so finding and in refusing to issue a compelling order against the utility.

The prosecutor argues that the landlord who receives his current by meter and pays for it at such rates as the amount consumed shall justify and allows his tenants *ad libitum* without specific charge to use electricity in their several apartments is not to be distinguished from the landlord who sets up a master meter, and individual meters in the premises of each tenant, and conducts with each such tenant the business of sale of electricity at a profit. We think that to state that proposition is to refute it. In the one instance the service to the consumer is by a controlled utility. In the other it is not.

The order of the board of public utility commissioners will be affirmed.