STATE of Oklahoma ex rel. Jan Eric CARTWRIGHT, Attorney General of Oklahoma, Appellant,

v.

OKLAHOMA ORDNANCE WORKS AUTHORITY, a Public Trust, and the Corporation Commission of Oklahoma, Appellees.

No. 54815.

Supreme Court of Oklahoma.

June 17, 1980.

---

Jan Eric Cartwright, Atty. Gen. of Oklahoma, Richard F. Berger, Asst. Atty. Gen., Oklahoma City, for appellant.

Lyons & Dean by Tony Jack Lyons, Pryor, Doerner, Stuart, Saunders, Daniel & Anderson by William C. Anderson, and

Kathleen Reinbolt, Tulsa, for appellee, Oklahoma Ordnance Works Authority.

Robert D. Stewart, Jr., Gen. Counsel, Corp. Commission of Oklahoma, Oklahoma City, for appellee Corporation Commission of Oklahoma.

HODGES, Justice.

The issue presented for determination on appeal is the statutory construction of 17 O.S.Supp.1975 § 160.1, insofar as it concerns regulation by the Corporation Commission of the Oklahoma Ordnance Works Authority, a public trust, [OOWA—Appellee].

The staff of the Oklahoma Corporation Commission filed an application seeking an order from the Commission which would require OOWA to submit its steam plant records for rate-making purposes. The Commission, after conducting a jurisdictional hearing pursuant to OOWA's Special Appearance, Plea to Jurisdiction and Motion to Quash, dismissed the application and set forth its findings of fact and conclusions of law in Order No. 163472, entered January 25, 1980, in Cause No. 26715.

1. The contested portion of the order provides:
"Based upon the evidence submitted to us we find that the steam produced by Oklahoma Ordnance Works Authority is produced for a limited purpose to serve a select category of steam users who use the steam for a particular purpose. Given the present conditions as reflected by the record the steam produced by Oklahoma Ordnance Works Authority is not available to anyone in the vicinity desiring to purchase steam; rather potential customers must utilize the steam for industrial process before they are able to purchase steam from Respondent and we find that based upon the uncontroverted evidence presented, all of the present purchasers of steam do use steam production exclusively for manufacturing processing.
"Accordingly we find that Oklahoma Ordnance Works Authority does not serve the general public under the facts established on the record and accordingly Respondent is not subject to the jurisdiction of this Commission under 17 O.S.1975 § 160.1."

2. The rate-making authority and general jurisdiction of the Corporation Commission over steam supply systems is set forth in pertinent part by 17 O.S.Supp.1975 § 160.1(A):
"The Corporation Commission shall have rate-making authority and general jurisdiction

The Commission concluded[1] that: OOWA did not serve the general public; the steam produced by the plant was used exclusively for manufacturing processing; and OOWA was not subject to the jurisdiction of the Commission pursuant to 17 O.S.Supp.1975 § 160.1.[2] The Attorney General appealed.

I

■ Three positions are advocated on appeal. The Attorney General contends that the question on appeal is the determination of Legislative intent in the enactment of 17 O.S.Supp.1975 § 160.1. It is his position that the Legislature intended for the Commission to regulate all supply systems of steam, as well as steam heat. He argues that the Commission refused to assume rate-making jurisdiction over OOWA solely on the finding that the steam supplied by OOWA to its customers is used for manufacturing purposes, and not for heating. OOWA argues that the Commission correctly concluded it was furnishing service to a limited, select class of customers, and not to the general public and, therefore, the statute is inapplicable.[3] The Corporation Com-

over all supply systems of natural gas, steam heat and steam serving the general public notwithstanding operation thereof by a trust, authority, cooperative and subsidiary created for the benefit or furtherance of a public function pursuant to a trust or public trust, unless the said body operating said system has financing or is in the process of financing the acquisition, improvement or extension of the said system with a loan from the United States of America and is a nonprofit trust."

3. The undisputed evidence reflects that:
1) OOWA owns and operates the Mid-America Industrial District, a public trust, encompassing approximately 7500 acres of realty. 2) There were six customers of the Chouteau steam plant at the time the Authority purchased it from the Grand River Dam Authority in August of 1978, four of whom were tenants of the Mid-America Industrial District and two of whom were located on sites adjacent to the District. 3) The Authority purchased the Chouteau steam plant to preserve an uninterrupted source of steam supply for the existing tenants of the District as well as potential new tenants of the District. 4) At the present time, there are seven customers, six within the District and one adjacent to it. 5) Once customer located adja-

mission asserts it should be allowed to make an independent determination of its jurisdiction over persons, firms, corporations or other legal entities which are alleged to be subject to the regulation of the Commission. Determination of jurisdiction is a question of law. This Court will make an independent finding of jurisdiction in reviewing an order of the Commission.[4]

## II

██ The trust indenture provides that the property is to be held in trust for the public use and benefit of the State of Oklahoma and the welfare of the people, pursuant to the public purposes as then set forth in the State Economic Development Act, 74 O.S.1971 § 671 et seq. [Since repealed—see 74 O.S.Supp.1974 § 2001 et seq.] A public trust is by the nature of its creation a public business. The fact that OOWA services a small number of patrons does not remove it from the jurisdiction of the Commission. The Commission held in its order that "the number of customers served does not establish service to the general public." This premise has been long recognized. In *Southern Oklahoma Power v. Corporation Commission*, 96 Okl. 53, 220 P. 370 (1923), this Court determined that an electrical plant with only one customer was a public utility subject to regulation.

## III

Two recent cases are strongly urged by the Commission and OOWA to support the proposition that OOWA is not serving the general public and is, therefore, not within the Commission's jurisdiction. Both are clearly distinguishable. The case of *Application of Board of Regents*, 595 P.2d 785 (Okl.1979) was decided primarily on 70 O.S.

Supp.1973 § 4001, not 17 O.S.Supp.1975 § 160.1. Section 4001 involved the supply of water, gas, heat, or power to the university, college or institution, or related institution. OOWA is not an educational institution governed by the board of regents, nor are its patrons related institutions. In addition, 70 O.S.1971 § 4013 vested exclusive determination of all self-liquidating revenue bond matters involving universities in the Board of Regents. *Baker v. Public Service Co.*, 606 P.2d 567 (Okl.1980) involved a submetering case. Private companies operating shopping centers were found not to be serving the public and thus not public utilities. There was no contention that Public Service Co., who provided the electricity to the company, was not a public utility. It was subject to regulation under 17 O.S.1971 § 151, not 17 O.S.Supp.1975 § 160.1. None of the entities involved were public trusts. There is a great difference between direct regulation of shopping center owners/operators on basis that they are part of the distribution of electrical power to ultimate consumers, and regulation of steam supply systems owned by public trusts subjected expressly and specifically by plain, clear, unambiguous statutory language to regulation as public utilities by the Legislature. Further, in *Baker* the company was limited to servicing the shopping center and could not provide electricity to adjacent property.

Art. III, § 2 of the Trust Indenture provides for the operation of the OOWA for use by the United States, the State of Oklahoma, or any municipality thereof, or for the occupancy and use of any private manufacturing, processing, commercial, or other industrial establishments of whatever kind or character whose operations are within or

cent to the District at the time of the sale from GRDA to the Authority ceased operations at about the time of that sale, but may resume operations in the near future, and if it does, the Authority would attempt to honor the steam service arrangements that customer had with GRDA. 6) With the exception of the potential customer, it is the policy of the Authority to reserve all remaining capacity of the Chouteau steam plant for new industrial tenants of the District. 7) All present cus-

tomers purchase for industrial and manufacturing purposes and not for heating, cooling, or resale. 8) The Authority's policy is, and will be, to sell steam solely for use by industrial and manufacturing processors located in the District and not for heating, cooling or resale.

4. *Southern Pacific Communications Co. v. Corp. Comm.*, 586 P.2d 327, 330 (Okl.1978).

adjacent to the trust property; and to furnish utilities within or adjacent to the OOWA which are of public use or economic benefit to the public welfare.[5]

It is undisputed that the OOWA provided steam to at least one other customer who was not an occupant of the Mid-America Industrial District. On December 20, 1979, the day after hearings were commenced on the application to subject OOWA to the rate-making authority of the Corporation Commission, the Board of Trustees adopted a resolution which precluded the sale of steam to any new customer who was not an occupant of the Mid-America Industrial District which is owned and operated by the Trust.[6] However, the trustees may withdraw the resolution and provide service to adjacent properties.

■ The Commission may not avoid its responsibility for regulation of rates for OOWA by carving out an exception where none exists. Unless a public trust meets the criteria dictated by *State v. Garrison,* 363 P.2d 285 (Okl.1961) requiring voter control, every public utility which operates in the public interest as a virtual monopoly must be regulated by the state or the Commission.[7]

■ The Legislature has dictated in clear and unambiguous language that the Corporation Commission *shall* have rate-making authority and general jurisdiction over *all supply systems* of steam heat and *steam* serving the general public regardless of whether the system is operated by a trust created for the benefit of a public function.[8] The statutory language is broad and inclusive and manifests an intent to regulate all steam supply systems regardless of how the patrons utilize the commodity. The Legislature obviously intended to extend the Commission's jurisdiction to situations exactly like the one presented. The only exemptions are enumerated in § 160.1: 1) Existing or pending financing of the acqui-

---

5. The Trust Indenture Art. III, § 2 provides:
"In carrying out said public purposes, to finance and refinance the acquisition, construction, purchase, installation, equipment, maintenance, decontamination, salvaging, disposal, repair, enlargement, remodeling and operation of buildings and other facilities of the Oklahoma Ordnance Works in Mayes County, Oklahoma, for use by the United States of America, or the State of Oklahoma or any municipality thereof, or for use by authorities or agencies of the United States of America or the State of Oklahoma or of any municipality thereof, or for the occupancy and use of any private manufacturing, processing, commercial, or other industrial establishments of whatsoever kind or character whose operations within or adjacent to said Trust property and whose employment, payrolls, and other public economic benefits are deemed by the Governor of the State of Oklahoma and the Trustees to be conducive to the public welfare; to plan, establish, develop, construct, enlarge, improve, extend, maintain, equip, operate, lease, furnish, provide, supply, regulate, hold store and administer utilities, buildings, facilities and other works either within or adjacent to said Oklahoma Ordnance Works which are or shall be.of public use or of economic benefit to the public welfare; and to service machinery or equipment in connection with such utilities, buildings, and facilities; all as to each Project as may be approved by the Governor of the State of Oklahoma and Trustees as being necessary for the benefit and development of the Oklahoma Ordnance Works, the State of Oklahoma, and conducive

to the welfare of the people of the State of Oklahoma."

6. The resolution provided in pertinent part:
"RESOLVED, that the following are hereby adopted as the official policies of this Authority with respect to its operation of the Steam Plant Division:
"1. At no time will this Authority willingly give its consent to the resale by any customer of steam to a third party.
"2. That Except for Nipak, Inc., which was a steam customer of the Grand River Dam Authority, it will be the policy of the Oklahoma Ordnance Works Authority not to enter into any contract for the sale of steam to any new customer who is not an occupant of the Mid-America Industrial District, which is owned and operated by the Oklahoma Ordnance Works Authority.
"3. This Authority sells steam solely for use for manufacturing and industrial processes, and at no time will sell steam for the purpose of heating or cooling."

7. In *State v. Garrison,* 363 P.2d 285, 287 (Okl. 1961) this case involved a franchise by a trust. The Court held that a provision "that all power granted by the Constitution, to regulate rates and service, shall be reserved to the people to be exercised by Ordinance of the Council" to be constitutionally sound.

8. See note 2, supra.

sition, improvement or extension of the supply system with a loan from the federal government; and 2) Section 160.1 does not apply to a public trust whose Board of Trustees is composed of elected officials, elected by the customers. There is no evidence or any reasonable inference to infer the OOWA qualifies for an exemption.

REVERSED AND REMANDED.

WILLIAMS, BARNES, SIMMS and HARGRAVE, JJ., concur.

LAVENDER, C. J., IRWIN, V. C. J., and OPALA, J., dissent.