2007 OK CIV APP 72

**In the Matter of J.J., an alleged deprived child.**

**The State of Oklahoma, Petitioner/Appellee,**

**v.**

**Keith Bean, Respondent/Appellant.**

**No. 104,044.**

Court of Civil Appeals of Oklahoma, Division No. 2.

July 13, 2007.

Lisa E. Shaw, Assistant District Attorney, Lawton, OK, for Appellee.

Susan Zwaan, Tayloe, Zwaan and Johnson, Lawton, OK, for Appellant.

JOHN F. FISCHER, Presiding Judge.

¶1 Keith Bean (Father), the natural father of JJ, seeks review of an order of the Trial Court holding that the State of Oklahoma had appropriate emergency jurisdiction and adjudicating JJ deprived. Based on our review of the record on appeal and applicable law, we affirm in part and remand for further proceedings consistent with this opinion.

## BACKGROUND FACTS

¶2 JJ was born to Father and Patricia Martin (Mother) on May 3, 1997. On January 28, 2001, the District Court of Surry County, North Carolina, awarded temporary custody to Father after hearing evidence that JJ might have been exposed to a sexually abusive relationship with Mother's two sons. Pursuant to that order, Father was not to possess or consume alcoholic beverages while exercising custody over JJ. The temporary order further awarded Mother "extensive visitation" with JJ, on the express condition that neither of her sons be present during visits. The temporary order has not been finalized or modified.[1]

¶3 Following the custody proceeding, Mother left North Carolina. After living in Texas and Germany, Mother moved to Lawton, Oklahoma, in 2006. On returning to the United States, Mother called Father and arranged to pick JJ up at Father's home in early June 2006. Mother and Father dispute whether the visit was intended to be permanent or temporary. After arriving in Oklahoma, Mother enrolled JJ in school. After Mother failed to return JJ to North Carolina, Father traveled to Oklahoma and reported the issue to the Department of Human Services (DHS). DHS investigated and determined that JJ did not wish to be returned to her father. On October 3, 2006, the State of Oklahoma filed a petition in the Trial Court to adjudicate JJ deprived and make JJ a ward of the court alleging Father's history of

drug and alcohol abuse. Father filed a motion to dismiss on November 13, 2006, arguing that the Trial Court lacked jurisdiction over JJ in this matter.

¶4 Following a non-jury trial on November 16, 2006, the Trial Court held that emergency jurisdiction over JJ was appropriate, adjudicated JJ deprived and awarded temporary custody of JJ to DHS. Father now challenges the sufficiency of this order, arguing that the Trial Court lacked jurisdiction over JJ because Father's conduct does not constitute an emergency sufficient to trigger the Trial Courts jurisdiction.

## STANDARD OF REVIEW

¶5 "Determination of jurisdiction is a question of law." *State ex rel. Cartwright v. Oklahoma Ordnance Works Auth.*, 1980 OK 94, ¶4, 613 P.2d 476, 479. On appeal, contested questions of law are reviewed *de novo. See National Diversified Bus. Servs., Inc. v. Corporate Fin. Opportunities, Inc.*, 1997 OK 36, n. 18, 946 P.2d 662, 666 (An appellate court has plenary, independent and nondeferential authority to re-examine a trial court's legal rulings).

## DISCUSSION

¶6 The Oklahoma Uniform Child Custody Jurisdiction and Enforcement Act (OUCJEA) provides, "A court of this state has temporary emergency jurisdiction if the child is present in this state and ... it is necessary in an emergency to protect the child because the child ... is subjected to or threatened with mistreatment or abuse." 43 O.S.2001 § 551–204(A). At the hearing on DHS's petition, the Trial Court heard evidence that Father habitually drank in front of his daughter. Mother also testified that one of her sons resided with her in Lawton for thirty days, currently resides in Lawton and has access to her home. The Trial Court found that an emergency existed because both parents were in violation of the North Carolina Court's custody order.

---

1. This order appears to have been reaffirmed in the North Carolina Court's September 26, 2006, Order for Clarification stating that all prior orders granting custody to Father remain in full

force and effect under the laws of North Carolina and that no action had been filed by any person to modify the previous custody orders.

¶ 7 The North Carolina Court's order clearly states that neither of Mother's sons is to be present during visitation with JJ, due to concerns that Mother's sons posed a threat to JJ's safety. We hold that the Trial Court did not err in finding that Mother's violation of the North Carolina Court's order constituted an emergency sufficient to trigger its temporary emergency jurisdiction pursuant to the OUCCJEA.[2]

¶ 8 However, the temporary emergency jurisdiction provision of the OUC-CJEA requires that, where another state court of competent jurisdiction has made a prior custody determination, "any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction...." 43 O.S.2001 § 551–204(C). The Trial Court's order contains no such provision. Therefore, this case must be remanded to the Trial Court for inclusion of a provision required by section 551–204(C).

¶ 9 Further, where a court of competent jurisdiction has previously made a custody determination, the OUCCJEA requires that "[a] court of this state ... shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." 43 O.S.2001 § 551–204(D). The record on appeal indicates that, at the hearing, the Trial Court expressed an intent to communicate with the District Court of Surry County, North Carolina, but does not reveal whether that communication occurred. Like the time limit required by section 551–204(C), subparagraph (D) required communication with the court having initial jurisdiction.

## CONCLUSION

¶ 10 The Trial Court did not err in holding that Mother's violation of another state's previous custody order was sufficient to trigger its temporary emergency jurisdiction pursuant to the OUCCJEA, and we affirm that portion of the order. However, the Trial Court's order does not specify a time period required by 43 O.S.2001 § 551–204(C), and we remand the case with instructions to the Trial Court to revise the order to conform to the statute and to contact the District Court of Surry County, North Carolina, if such contact has not already been established.

¶ 11 **AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

RAPP, C.J., and WISEMAN, J., concur.

---

**2.** Because we hold that Mother's conduct was sufficient to invoke the Trial Court's jurisdiction, we need not consider Father's contention that his conduct did not pose an emergent threat to JJ's safety.