Travice JENNINGS, Mr. and Mrs. Richard G. Kilpatrick, Robert Gene Compton, Sr., Kathleen J. Compton, and Doug Maley, for themselves and All Others Similarly Situated, Appellants,

v.

GLOBE LIFE & ACCIDENT INSURANCE COMPANY OF OKLAHOMA, Appellee.

No. 80116.

Supreme Court of Oklahoma.

July 16, 1996.

Rehearing Denied Sept. 13, 1996.

Robert C. Schacher, Oklahoma City, for Appellants.

John T. Edwards, Shannon L. Edwards, Monnet, Hayes, Bullis, Thompson, & Edwards, Oklahoma City, for Appellee.

SIMMS, Justice.

This is an appeal from an order dismissing the appellants' lawsuit for failure to state a claim upon which relief may be granted. The appellants, Travice Jennings, Mr. and Mrs. Richard G. Kilpatrick, Robert Gene Compton, Sr., Kathleen J. Compton, and Doug Maley, (Appellants), brought this ac-

tion against appellee, Globe Life Insurance Company of Oklahoma, alleging Globe Life violated provisions of the Oklahoma Uniform Consumer Credit Code (UCCC), 14A O.S. 1991, § 1–101, et seq., and the Rules of the Oklahoma State Insurance Commissioner. Appellants specifically complained of "overcharges" by Globe Life for insurance provided to consumer debtors to cover their indebtedness should the debtors become unable to pay their creditors. The "overcharges" were in the form of compensation to Globe Life's representatives for selling the insurance which appellants contended was excessive and violative of Insurance Commission rules as will be more fully explained below.

The district court dismissed the action finding the relevant statutory scheme does not provide for a private right of action by consumer debtors against insurers of that consumer debt. The Court of Appeals agreed and affirmed the district court order. The Court of Appeals decision that no private right of action exists under the Uniform Consumer Credit Code for overcharge of consumer credit insurance is in direct conflict with an unpublished opinion of a temporary panel of the Court of Appeals, however, which held a private right of action does exist. (*Brewster v. Transport Life Ins. Co.*, Case No. 80,702). Certiorari was granted to resolve this conflict. We agree with the Court of Appeals that appellants do not have a cause of action against Globe Life for alleged overcompensation of Globe Life's agents and representatives for credit insurance either under the Rules of the Insurance Commissioner or the UCCC. Therefore, we expressly reject the holding in *Brewster v. Transport Life* Ins. Co. The opinion of the Court of Appeals is vacated, and the order of the district court is affirmed.

## I.

### FACTS AND PROCEDURAL HISTORY

Globe Life sells consumer credit insurance which is defined, in part, as

"insurance, other than insurance on property, by which the satisfaction of debt in

whole or in part is a benefit provided, ..."
14A O.S.1991, § 4–103.

For several years during the 1980's, Globe Life sold such policies in Oklahoma through its representatives such as automobile dealers, boat dealers and lending institutions. Through the dealers and lending institutions, each of the Appellants purchased consumer credit insurance from Globe Life, paying the maximum rate of premium allowed by Rule 69–8.13 of the Oklahoma State Insurance Commissioner. Rule 69–8.13, promulgated by the Insurance Commissioner pursuant to authority granted by 14A O.S.1991, § 4–112, contains numerous provisions to assist the Insurance Commissioner in regulating credit life insurance and credit accident and health insurance.[1] The Rule provides, in pertinent part, as follows:

"The purpose of this section of the Rule is to establish procedures for providing experience refunds and for adjusting rates resulting from an adjusted compensation in the matters of credit life and credit accident and health insurance.

**A. Adjustment in Rates Resulting from Adjusted Compensation.**

1. Any insurer who, for credit insurance written in any of its credit insurance accounts in this State, charges or proposes to charge the presumptive rates of premium set forth in this Rule, and who, for the production of such insurance, pays or proposes to pay, directly or indirectly, compensation in excess of the presumptive allowances set out in these Rules shall:

    a. reduce the premium rates charged in any such account by four percent (4%) for credit life insurance, and by five percent (5%) for credit accident and health insurance, (or fractions thereof) of the applicable presumptive premium rate set out in this Rule for each one percent (1%) or fraction thereof, by which it pays or proposes to pay compensation in excess of the presumptive allowance set forth in this Rule. Such compensation in excess of the presumptive

---

1. Rule 69–8 is now codified as Title 365:10–5–1– 60 of the Oklahoma Administrative Code.

compensation rate shall be applied thereafter to all subsequently written net premium calculated upon the basis of the reduced rates of premium as specified above; and,

b. file with the Commissioner a transcribed copy of any agreement, whether written or oral, direct, indirect or reciprocal, by which for the sale of credit insurance in this State it pays, proposes to pay or contingently may pay compensations in excess of the allowable presumptive compensations set out in this Rule.

2. The following compensation allowances are presumed to be reasonable compensation for the sale of credit insurance in this State:

a. in the aggregate, to any persons including agents or limited insurance representatives, directly or indirectly connected with the creditor, or agents independent of the creditor, forty percent (40%) of the net written life insurance premiums;

b. in the aggregate, any persons including insurance agents or limited insurance representatives, directly or indirectly connected with the creditor, or agents independent of the creditor, forty percent (40%) of the net written accident and health insurance premiums; and,

"Compensation" shall include, but not be limited to, the receipt directly or indirectly or reciprocally of commissions, contingent commissions, service fees, policy fees, expense allowances or reimbursements, dividends or other distribution of earnings based solely upon the profits derived from issuing or reinsuring and policy of credit life or credit disability insurance procured, issued, or delivered by such creditor, agent, or limited insurance representative, gifts, all benefits such as items of merchandise, equipment, travel, conventions, vacations, rewards, bonuses, trading stamps, scripts, or any other form of remuneration resulting directly or indirectly from the sale of credit insurance or as an inducement to or payment for sales made or volume of sales obtained. Experience refunds, retrospective rate credits, and dividends are treated as compensation for the sole purpose of determining presumptively reasonable compensation allowances under this section. Compensation shall also include any amounts or things of value received from or paid by any person other than an insurer in consideration of the sale or retention of credit insurance.

3. In the event that premium rates for any account of credit insurance are required to be reduced in accordance with this Rule by reason of base or front-end compensation in excess of the presumptive compensation allowance, the effective date of such reduction shall be the same as the effective date of the agreement providing for such payment. For any reduction of premium rates required by this Rule by reason of contingent compensations based upon favorable experience which, alone or together with base or front-end compensations, exceed the presumptive compensation allowances as set out in this Rule, the effective date of such reduction of premium rates shall be the termination date of the period for which such contingent compensations are paid, and such rate reduction shall remain in effect in that account for a period of twelve (12) months thereafter, regardless of any change or replacement of the insurer during any such twelve month period; provided that no reduction of premium rates shall be required by reason of any contingent compensations earned prior to the effective date of this Rule.

4. In the event that premiums are paid and charged debtors at rates in excess of the reduced rates permitted by this Rule, whether by inadvertance [sic] or otherwise, the insurer shall be responsible for the refund of such overpayment to the person or persons who paid such premiums on insurance

charge in addition to any other remedies provided by law."

\*    \*    \*    \*    \*    \*

In summary, this Rule establishes a maximum allowable commission that may be paid to insurance company representatives for the sale of consumer credit insurance. It also provides for the Commissioner's reduction of premium rates for any violation found of the Rule's set allowable commissions.

Pursuant to authority granted by 36 O.S. 1991, §§ 309.1–7, the Insurance Commissioner examined the business practices of Globe Life for the years 1986 to 1988. In its subsequent report, the Insurance Commissioner noted that Globe Life's practice of paying compensation to various lending institutions, automobile dealerships and boat dealerships "appears to be in conflict with the Commissioner's Rule 69–8.13." After negotiations, a settlement was reached between Globe Life and the Insurance Commissioner, but *no finding* was made by the Insurance Commissioner that Globe Life violated Rule 69–8.13.

Appellants learned of the report and brought this action alleging Globe Life violated a portion of Rule 69–8.13, by paying commissions to its agents and representatives in excess of the maximum rate of commission allowed by the Rule. Appellants urge that as a result of the payment of excess compensation by Globe Life, Rule 69–8.13 entitles appellants to a reduction in the premium rate for their consumer credit insurance and a refund of premiums which were charged in excess of the required reduced rates. They conclude that this required refund coupled with provisions of the UCCC entitles them to bring a private action against Globe Life for refund of paid premiums over the reduced rate set by the Rule.

As part of their petition, appellants also requested the matter be certified as a class action on behalf of similarly situated consumer debtors and demanded punitive damages against Globe Life for the fraud allegedly perpetrated upon them and the plaintiff class. The trial court found that no private right of action against an insurer under these circumstances is contemplated by the Rule and the UCCC.

The Court of Appeals' affirmance of the district court's order dismissing the action was grounded upon an analysis of whether the Legislature intended to create a private right of action by debtors against insurers of consumer debt for excessive premium rates on such insurance under the teaching of *Holbert v. Echeverria*, 744 P.2d 960 (Okla.1987). Under that analysis, the court found that neither the statutes nor the Rule reveal any explicit intent by the Legislature to create a private right of action. Likewise, that court found no implied intent to do so. We agree.

II.

RULE 69–8.13 DOES NOT AUTHORIZE INSUREDS TO BRING AN ACTION AGAINST THEIR INSURER FOR OVERCOMPENSATING THE INSURER'S AGENTS OR REPRESENTATIVES FOR SELLING CONSUMER CREDIT INSURANCE TO THAT INSURED.

■ The Insurance Commissioner's authority to regulate consumer credit insurance through Rule 69–8 is derived from the Oklahoma Constitution and Oklahoma Statutes which empower him to enforce and administer the provisions of the Insurance Code. Okla. Const., Art. 6, §§ 22–23; 36 O.S.1991, § 307; *Oklahoma Benefit Life Ass'n v. Bird*, 192 Okla. 288, 135 P.2d 994 (1943); *State ex rel. Read v. Mid–West Mut. Benefit Co.*, 181 Okla. 338, 73 P.2d 1138 (1937). The Insurance Commissioner is further authorized to adopt rules and regulations for the purposes of implementation, execution and administration of the Insurance Code provisions. 36 O.S.1991, § 307.1. It is this authority which was exercised in promulgating Rule 69–8.

■ Rule 69–8.13 is part of a larger regulatory scheme promulgated by the Insurance Commissioner to enforce the Insurance Code in terms of consumer credit insurance. Rule 69–8 encompasses over forty (40) pages of definitions, forms, rules and regulations all designed to meet the end of regulating such insurance and insurers. Rule 69–8.13 provides the maximum allowable compensation

and authorizes the Insurance Commissioner to enforce the Rule upon a determination that commissions exceed the maximum compensation.

The Insurance Commissioner has "jurisdiction over all complaints against persons engaged in the business of insurance, and *shall* hear all matters brought before him ..." 36 O.S.1991, § 307 (Emphasis added). Therefore, if an insured has a complaint concerning his insurance company, such complaint should be registered with the Insurance Commissioner who is mandated by law to consider it.

Once a complaint is lodged by an insured, the Insurance Commissioner may resolve the matter through various statutory means. If the insurer violates a provision of the Insurance Code or knowingly fails to comply with a rule or regulation of the Insurance Commission, the Commissioner is empowered to revoke, suspend or refuse to renew a certificate of authority[2]. 36 O.S.1991, § 619(A)(1) and (2). In lieu of revocation, suspension or refusal to renew the certificate of authority, the Commissioner may impose a fine against the insurer. 36 O.S.1991, § 619(B). There is nothing in the statutory scheme prohibiting the Commissioner from entering into a settlement agreement with an insurer when the Commissioner discovers a possible violation of the Rules by an insurer.

Appellants' assertion of a right to bring an action against Globe Life for allegedly overcompensating its sellers based upon Rule 69–8.13 is not persuasive. *Under the rules, only the Commissioner, not the insured, is empowered to compel an insurer to refund consumer credit insurance overcharges charged to and paid by the debtor.* Upon the Commissioner's determination that excessive compensation has been paid, premiums may

2. A certificate of authority permits an insurance company to transact insurance business in Oklahoma and may be granted only by the Insurance Commissioner. 36 O.S.1991, § 606.

3. Title 36 O.S.1991, § 309.4 provides that examination reports such as the one which Plaintiffs herein claim shows a violation of Rule 69–8 are to be submitted to the Commissioner for review. Upon review, the Commissioner may adopt, modify or correct the report and order any insur-

be ordered to be reduced and the Commissioner has the authority to enforce the order. *See* 36 O.S.1991, §§ 313–20.[3] Refusal or failure by inadvertence of the insurer to reduce the premiums may be compelled by legal remedies such as contempt proceedings. Of course, in this settlement reached between Globe Life and the Insurance Commissioner, there was no finding by the Commissioner that Globe Life had violated the Rule by overcompensating its representatives or overcharging its insureds.

### III.

### THE UNIFORM CONSUMER CREDIT CODE PROVISIONS REGARDING THE REFUND OF EXCESS CHARGES APPLY ONLY TO CREDITORS WHO HAVE OVERCHARGED THEIR DEBTORS.

■ Appellants point to three statutes to urge their proposition that the UCCC provides for a private right of action against an insurer who overcharges for consumer credit insurance. However, these statutes, 14A O.S.1991, §§ 4–104, 5–202, and 6–113, all relate to overcharges made by the *creditor.* The first statute, 14A O.S.1991, § 4–104, provides:

"(1) Except as otherwise provided in this article and subject to the provisions on additional charges (Section 2–202 and Section 3–202) and maximum charges (Part 2 of Article 2 and Article 3), a *creditor* may agree to provide insurance, and may contract for and receive a charge for insurance separate from and in addition to other charges. A *creditor* need not make a separate charge for insurance provided or required by him. This act does not authorize the issuance of any insurance prohibit-

er found to be in violation of any law, regulation or prior order to take such action necessary to cure such violation. Therefore, *this new rule also authorizes the Commissioner to compel an insurer to refund consumer credit insurance overcharges to the debtor.* Although § 309.4 was not enacted until after the examination and report concerning Globe Life in this case, other provisions such as 36 O.S.1981, § 310 made the report admissible in hearings before the Commissioner as to violations by the insurer.

ed under any statute, or rule thereunder, governing the business of insurance.

(2) The excess amount of a charge for insurance provided for in agreements in violation of this article is an excess charge for the purposes of the provisions of the article on remedies and penalties (Article 5) as to effect of violations on rights of parties (Section 5–202) and of the provisions of the article on administration (Article 6) as to civil actions by the Administrator (Section 6–113)." (Emphasis added).

Under this provision, *creditors* are allowed to charge their debtors for consumer credit insurance. Any excess charge or overcharge for insurance is to be treated in the same manner as *other excess charges by the creditor.* Section 5–202 provides in pertinent part:

"(1) If a *creditor* has violated the provisions of this act applying to certain negotiable instruments (Section 2–403), or limitations on the schedule of payments or loan term for supervised loans (Section 3–512), the debtor is not obligated to pay the credit service charge or loan finance charge and has a right to recover from the person violating this act or from an assignee of that person's rights who undertakes direct collection of payments or enforcement of rights arising from the debt a penalty in an amount determined by the court not in excess of three times the amount of the credit service charge or loan finance charge . . .

(2) If a *creditor* has violated the provisions of this act applying to authority to make supervised loans (Section 3–502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge. If he has paid any part of the principal or of the loan finance charge, he has a right to recover the payment from the person violating this act or from an assignee of that person's rights who undertakes direct collection of payments or enforcement of rights arising from the debt . . .

(3) *A debtor is not obligated to pay a charge in excess of that allowed by this act, and if he has paid an excess charge he has a right to a refund. A refund may be made by reducing the debtor's obligation by the amount of the excess charge. If the debtor has paid an amount in excess of the lawful obligation under the agreement, the debtor may recover the excess amount from the person who made the excess charge* or from an assignee of that person's rights who undertakes direct collection of payments from or enforcement of rights against debtors arising from the debt.

(4) *If a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand, the debtor may recover from that person a penalty in an amount determined by a court not exceeding the greater of either the amount of the credit service or loan finance charge or ten times the amount of the excess charge. If the creditor* has made an excess charge in deliberate violation of or in reckless disregard for this act, the penalty may be recovered even though the creditor has refunded the excess charge. No penalty pursuant to this subsection may be recovered if a court has ordered a similar penalty assessed against the same person in a civil action by the Administrator (Section 6–113) . . .

\* \* \* \* \* \*

(7) If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected.

(8) In any case in which it is found that a *creditor* has violated this act, the court may award reasonable attorney's fees incurred by the debtor." (Emphasis added).

Appellants principally rely on subsection (3) which provides for the debtor to recover the amount of an excess charge "from the person who made the excess charge". They urge this phrase establishes their private right to bring an action against Globe Life. However, this statute, like § 4–104, applies to excess charges by the *creditor.* Subsection (7) further shows that subsections (1), (2), and (4) apply only to creditors. Moreover, subsection (8) grants attorney's fees to the debtor for violations by a *creditor.* Only

subsection (3) presents even a remote application to other persons besides creditors.

Appellants claim that subsection (3) focuses on any entity, not just creditors, who may violate the UCCC by overcharging for insurance. However, subsections (1) and (2) clarify what is meant by "person" in subsection (3).[4] Subsections (1) and (2) govern *specific violations* of the UCCC by the *creditor.* When the creditor violates the UCCC, these subsections state that the debtor is not obligated to pay certain charges and the transaction is deemed void. The provisions then note that the debtor has a right to recover from "the person violating the act" or any assignee of *that person's* right to collect payments from the debtor. There is no question that "the person violating the act" refers to the *creditor.* Likewise, the assignee refers to one who has been assigned the creditor's rights.

On the other hand, subsections (3) and (4) are general provisions covering all overcharges by the creditor including those specific violations of the UCCC detailed in subsections (1) and (2). These latter subsections reiterate that the debtor is not obligated to pay the overcharges and provides for a refund from the creditor that overcharges. The term "person" used in subsection (3) is used in the same manner as that same term is used in subsections (1) and (2); *"person" refers to the creditor.*

The final provision relied on by Appellants is 14A O.S.1981, § 6–113, which provides in pertinent part:

> "(1) After demand, the Administrator may bring a civil action against a creditor for making or collecting charges in excess of those permitted by this act. An action may relate to transactions with more than one debtor. If it is found that an excess charge has been made, the court shall order the respondent to refund to the debtor or debtors the amount of the excess charge. If a creditor has made an excess charge in deliberate violation of or in reck-

less disregard for this act, or if a creditor has refused to refund an excess charge within a reasonable time after demand by the debtor or the Administrator the court may also order the respondent to pay to the debtor or debtors a civil penalty in an amount determined by the court not in excess of the greater of either the amount of the credit service or loan finance charge or ten times the amount of the excess charge. Refunds and penalties to which the debtor is entitled pursuant to this subsection may be setoff against the debtor's obligation. *If a debtor brings an action against a creditor to recover an excess charge or civil penalty an action by the Administrator to recover for the same excess charge or civil penalty shall be stayed while the debtor's action is pending and shall be dismissed if the debtor's action is dismissed with prejudice or results in a final judgment granting or denying the debtor's claim....*" (Emphasis added).

Appellants claim the emphasized language regarding the staying of an action by the Administrator when a debtor brings an action shows that the private rights of the debtor are superior. Yet, Appellants fail to recognize that the provision only applies when a "debtor brings an action *against a creditor* to recover an excess charge or civil penalty." This action against a creditor is the relief which § 5–202, *supra,* permits. Moreover, the language throughout § 6–113 refers to violations and excessive charges by the *creditor.* The statute does not make insurers subject to a debtor's action.

Because both §§ 5–202 and 6–113 relate to actions against the creditor and make no mention of a private action against an insurer, the reference in § 4–104 to these statutes likewise does not create such an action in § 4–104. There is no language in § 4–104 establishing its application to any entity other than a creditor. The statute does not apply to an insurer such as Globe Life who is not also the creditor in the transaction, and this provision also does not support Appel-

---

4. We are mindful that 14A O.S.1991, § 1–301(13), defines "person" as "a natural person or an individual, and an organization, joint venture or any legal entity however organized." This definition does not support Appellants' as-

sertion that subsection (3) grants a private right of action against insurers. Rather, it merely confirms that a creditor or any other party under the Act can be an individual or an entity.

lants' claim of a private right of action against insurers.

Having determined that neither the Insurance Commissioner's Rules nor the UCCC authorize a private civil action by a debtor against an insurer for alleged overcharges on consumer credit insurance premiums, we find the trial court did not err in dismissing appellants' class action lawsuit.[5]

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED and the order of the district court is AFFIRMED.

KAUGER, V.C.J., and HODGES, LAVENDER, HARGRAVE, SUMMERS and WATT, JJ., concur.

ALMA WILSON, C.J., concurs in result.

OPALA, J., concurs in judgment.

---

**5.** This conclusion is supported by the rationale in *Walker v. Chouteau Lime Co., Inc.,* 849 P.2d 1085 (Okl.1993); and, *Gianfillippo v. Northland Cas. Co.,* 861 P.2d 308 (Okl.1993).