1998 OK CIV APP 115

**LIBERTY BANK & TRUST COMPANY OF OKLAHOMA CITY, N.A.,**
Plaintiff,

v.

**Charles SPLANE and Sharon Ann Splane, Defendants/Appellants,**

and

**Northcutt Chevrolet–Buick Company, Inc. and Uslife Credit Life Insurance Company, Third Party Defendants/Appellees.**

Nos. 90917, 90918.

Court of Civil Appeals of Oklahoma, Division No. 3.

May 5, 1998.

Certiorari Denied July 8, 1998.

Justin LaMunyon, Enid, for Appellants.

Burck Bailey, Todd A. Nelson, Oklahoma City, for Appellees.

*MEMORANDUM OPINION*

HANSEN, Judge.

¶ 1 Appellants, Charles and Sharon Ann Splane (Splanes), seek review of trial court orders granting summary judgment in favor

of Appellees, Northcutt Chevrolet–Buick Company (Northcutt) and USLIFE Credit Life Insurance Company (USLIFE). The appeals were consolidated by order of the Supreme Court and are submitted without appellate briefing in accordance with the accelerated procedure under Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. Supp. 1997, Ch.15, App. Although all of Splanes' claims were not determined by the trial court's orders, the court directed preparation and filing of a final judgment pursuant to 12 O.S. Supp.1997 § 994.

¶ 2 This action had its origin in the Splanes' purchase of a passenger van from Northcutt in 1995. Plaintiff, Liberty Bank & Trust Company (Liberty), provided the financing for the purchase. USLIFE provided credit life and credit disability insurance coverage which was sold to Splanes by one of Northcutt's employees, who was also authorized to sell the insurance.

¶ 3 The total amount financed was $23,-461.69. This total included [a] the unpaid balance of cash price, [b] $1,028.68 premium for credit life coverage, [c] $1,261.08 premium for credit disability coverage, and [d] certain other small charges and fees. The sales contract was to be paid in 60 monthly installments. The total of payments, including $6,564.11 in finance charges, would be $30,025.80. The decreasing term credit life policy was written in the amount of the total of payments, as was the disability policy.

¶ 4 Splanes defaulted on their payments and the van was repossessed by Liberty. Liberty initiated this action to recover an alleged deficiency of $7,453.77. With their Answer, Splanes filed a counterclaim against Liberty and a third-party petition against USLIFE and Northcutt. Splanes claims were [1] fraud alleged against Liberty, USLIFE, and Northcutt by knowingly selling credit life insurance exceeding the statutory limit, [2] violation of the Oklahoma Consumer Credit Code (UCCC) against USLIFE and Northcutt by assessing an "excess charge" (premium attributable to excess insurance coverage), [3] failure by USLIFE and Northcutt under the UCCC to disclose the "excess charge" as a finance charge, [4] failure by Liberty to act in a commercially reasonable manner in disposing of the repossessed van, and [5] violation by Liberty, USLIFE, and Northcutt of the Oklahoma Consumer Protection Act's prohibition on unfair and deceptive practices by charging premiums for an amount of insurance that exceeds the maximum allowed by law.

¶ 5 USLIFE and Northcutt filed separate Motions for Summary Judgment, however, the arguments presented were substantially the same. USLIFE and Northcutt first asserted no *private* cause of action exists for insureds to bring suit against their insurer under either the Insurance Commissioner's rules or the UCCC for alleged overcharges on consumer credit insurance. Second, they argued the amount insured was *not* greater than the maximum allowed by law. In support of this second argument, USLIFE and Northcutt reference an opinion of the Oklahoma Insurance Commissioner. Third, they asserted the premiums charged for the credit life coverage were proper in accordance with Rule 365:10–5–64(b) of the Oklahoma Insurance Commissioner's Rules.

¶ 6 Splanes filed objections to the Motions for Summary Judgment filed by USLIFE and Northcutt, and also filed a "Countermotion for Partial Summary Judgment". Splanes conceded there were no material facts remaining in controversy. They argued they did have a private right of action under the facts of this case. They further argued the credit life policy was violative of Oklahoma law in that it covered the total of payments while "net coverage" (no finance charges included) was mandated by law. Splanes asked for "partial summary judgment" declaring the policy in question was issued in excess of an amount allowed by law.

¶ 7 The trial court granted USLIFE's Motion for Summary Judgment first. The court found Splanes' claims against USLIFE were barred by *Jennings v. Globe Life & Acc. Ins. Co.*, 1996 OK 85, 922 P.2d 622, regarding a private right of action against an insurer, and further held that Splanes had failed to submit evidentiary material to support a claim for fraud. The trial court alternatively held USLIFE's motion should be granted because [a] the court deemed it ap-

propriate to defer to the opinion of the Insurance Commissioner that Oklahoma law permits "total of payments coverage", and [b] USLIFE had insured a lawful amount.

¶8 The trial court later granted Northcutt's Motion for Summary Judgment for the reason that Splanes had submitted no evidence to support any claim against Northcutt. The court also entered the same alternative holdings it had decreed in granting judgment for USLIFE. After the trial court directed final judgments be entered in accordance with 12 O.S. Supp.1997 § 994, Splanes brought this appeal.

¶9 Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact, and that a party is entitled to judgment as a matter of law. *First State Bank v. Diamond Plastics,* 1995 OK 21, 891 P.2d 1262 (Okla.1995). As noted above, the parties agree there remains no controversy as to any material question of fact. Our determination must then be whether USLIFE and Northcutt are entitled to summary judgment as a matter of law.

¶10 Splanes' contentions on appeal are that the trial court erred in each of its specific holdings supporting summary judgment. One of the alternative bases upon which the trial court granted summary judgment for USLIFE and Northcutt was that the credit life coverage was issued in a lawful amount. Because we find the trial court was correct in this holding, which disposes of all Splanes' claims against USLIFE and Northcutt, we need not address the remainder of Splanes' contentions.

¶11 Each of Splanes' claims against USLIFE and Northcutt is grounded upon the allegation that the credit life coverage was in excess of that allowed under Oklahoma law. The coverage was written in the amount of the *total of payments* to be made under the installment sales contract, including the finance charge, if the payments were made as scheduled.

¶12 The trial court based its holding, at least in part, in deference to the opinion of the Oklahoma Insurance Commissioner that our law permits "total of payments" coverage. Our courts will show great deference to

the interpretation given a statute or rule by the officers or agency charged with its administration, and will not disturb that construction except for very cogent reasons. *Dunn v. Oklahoma Tax Commission,* 1993 OK CIV APP 105, 862 P.2d 1285.

¶13 The Insurance Commissioner's opinion, dated April 8, 1997, was issued in response to a public inquiry regarding the applicability of the rationale of an Alabama Supreme Court decision, *McCullar v. Universal Underwriters Life Ins. Co.,* 687 So.2d 156 (Ala.1996), upon credit insurance regulations of the Oklahoma Insurance Department. Most simply stated, *McCullar,* in a plurality opinion, holds that under Alabama law the *total of payments* rule in limiting credit life is improper. The inquiry to the Commissioner was prompted by an Oklahoma attorney's letter stating automobile dealerships here may, under the *McCullar* rationale, be subjecting themselves to lawsuits in connection with credit life insurance sales.

¶14 The Insurance Commissioner opined *McCullar,* which was based on different regulatory language, could not be applied to Oklahoma because:

> Under Oklahoma law, the "debt" upon which the initial premium is calculated includes the "periodic scheduled unpaid installments of the indebtedness," the so-called "total of payments" method. *See,* Okla. Reg.365:10–5–66(b)(1). (Emphasis in original).

¶15 Ordinarily, this opinion, taken on its face, might be sufficient to dispose of this matter. However, we find it necessary to determine if there are cogent reasons not to give the opinion the deference normally due. *Dunn,* 862 P.2d at 1286. Splanes point out the section of the Oklahoma Administrative Code cited and quoted in the Commissioner's opinion pertains expressly to credit accident and health insurance, not credit life insurance. The opinion also does not expressly refer to credit life insurance regulations.

¶16 Splanes argue the opinion should not be considered controlling because policy considerations are different for credit life and credit accident and health insurance. More specifically, they assert total of payments

coverage for credit life would come into effect only under the unlikely circumstance that the debtor made no payment for the full term of the contract and the creditor did not enforce the acceleration clause. Splanes note the debt is accelerated on death and some interest would not be earned.

[1] ¶ 17 Notwithstanding Splanes' policy argument and the Insurance Commissioner's reference to an inappropriate rule, we find the Commissioner reaches the correct conclusion in his opinion. Although, the Insurance Commissioner, in the rules, has not set standards for the initial amount of credit life insurance with the same specificity as for credit accident and health, the credit life initial limits mandated by the Legislature support the Commissioner's opinion.

¶ 18 In accordance with 14A O.S.1991 § 4–202(1)(a), which is found in the UCCC, the amount of consumer credit insurance providing life coverage "may not initially exceed the *debt.*" (Emphasis added). The term *debt* is not defined in the UCCC. There is, however, an equally specific, and more instructive, enactment relating to insurance on the life of a debtor found in 24 O.S. Supp.1992 § 13. Section 13(A) provides, in relevant part:

> Whenever a credit life insurance policy … is obtained on the life of a debtor under or pursuant to the terms of a contract for the sale of a motor vehicle, …, the principal amount payable thereunder shall not be in excess of the *total amount the debtor agrees to pay* when he enters into such contract, provided, however, that where the indebtedness is repayable in installments, the amount of the insurance shall not exceed the approximate unpaid balance of the loan. (Emphasis added).

¶ 19 Reading § 4–202(1)(a) with § 13, we find no inconsistency in holding the *debt* in § 4–202(1)(a) is the *total amount the debtor agrees to pay.* Our appellate courts have not construed either of these sections in relation to the issue before us. We may therefore look to the holdings of our sister courts for guidance in defining what elements constitute the *total amount.* The Arkansas Supreme Court considered facts very similar to the present case in *Winkle v. Grand National Bank,* 267 Ark. 123, 601 S.W.2d 559 (1980).

¶ 20 In *Winkle,* the question was whether the amount of credit life insurance coverage was excessive, resulting in excess premiums that would make the transaction usurious. The Arkansas statute at issue provided "[t]he amount of credit life insurance shall not exceed the original amount of indebtedness." *Indebtedness* was also statutorily defined as "the total amount payable by a debtor to a creditor in connection with a loan or other credit transaction." The *Winkle* court held the *total amount payable* included the principal, insurance premium and finance charges, or, stated otherwise, the *total of payments.*

¶ 21 The *Winkle* Court was unpersuaded by an argument similar to the one Splanes made here, that is, the initial policy limits based on total of payments would never be paid on a credit life policy because some interest would not be earned. The Arkansas Supreme Court did not find this contrary to the statutes, and further noted that under Arkansas law any amount not needed to satisfy the outstanding balance of the note would be paid to the secondary beneficiary or the estate of the insured. We note Splanes' USLIFE policy has a provision to the same effect. We find the Arkansas Supreme Court's reasoning persuasive.

¶ 22 We are, however, unpersuaded by Splanes' contention the total of payments rule is prohibited by the language in § 13(A) that provides "where the indebtedness is repayable in installments, the amount of the insurance shall not exceed the approximate unpaid balance of the loan." The initial amount of insurance equals the total of payments. By its own terms, Splanes' policy provides "the amount of insurance in force decreases each month by equal amounts obtained by dividing the Initial Amount by the term in months…." Thus, the decreasing amount of insurance will not exceed the unpaid balance. This is also expressly provided by the policy terms.[1]

¶ 23 Splanes rely on the Alabama Supreme Court's opinion in *McCullar* to support their contention debt means the amount

---

1. Language similar to the § 13(A) language discussed here was deleted from § 4–202(1)(a) when the UCCC was adopted in Oklahoma. It appears the purpose of the deletion was to allow

financed plus *accrued* interest. As we noted above, *McCullar* is a plurality opinion, with three justices joining out of the eight participating. There are three separate dissents from the plurality's holding the plain language of the statutes and rules could not be read to support a *total of payments* rule in Alabama. We find the reasoning of the dissents more weighty than the plurality. Particularly instructive is the dissent of Chief Justice Hooper, who writes exhaustively on every aspect of this issue.

¶ 24   Chief Justice Hooper includes a survey of states, concluding at least 42 states, including Oklahoma, use the *total of payments* method of establishing credit life insurance limits. The Chief Justice notes as follows why there are practical, as well as legal, reasons for using this method:

> ... Not only is the seller's risk lowered by credit life insurance, but so is the buyer's risk. If the seller felt that only the principal was covered by the credit life insurance, there would be a need to raise the interest rate charged for loans to purchase the seller's cars.... Are there not other costs besides interest that the seller has to take into account. If a buyer dies, interest accrues from the time of the last payment. How much will that be? Not much, but who knows at the point of sale exactly now much will accumulate.

> ... In order for buyers to have the greatest sense of security for themselves and their heirs (and in some cases for them to even afford to buy a car), they purchase credit life insurance that covers the "total of payments" owed. The risk for both the buyer and the seller is lowered to its optimal point.

¶ 25   Splanes argue allowing use of the *total of payments* method is contrary to the objective of Titles 14A and 24, Oklahoma Statutes, which they contend is to protect consumers. They suggest, without providing comparative proof, that credit life should be limited to protect consumers against "purchasing more of this expensive insurance than is necessary to protect the creditor." Chief Justice Hooper, in *McCullar*, recognizes credit life insurance is expensive, but

notes, "[e]xpensiveness is not the determinative factor when one is checking for fraud." Here, as in *McCullar*, the credit insurance was not required, in fact, it had to be requested. Even accepting that similar, but more economical, insurance protection may have been available, we are not authorized to reverse because Splanes entered into a bad bargain. If consumers are not adequately protected by extant legislation, that is a matter for the Legislature.

■   ¶ 26   We hold use of the *total of payments* method of calculating the appropriate amount of consumer credit insurance is correct under our law. This method pertains to both credit life and credit accident and health policies. The Insurance Commissioner's opinion in that regard reached the proper conclusion. Splanes' claims against USLIFE and Northcutt were all grounded on the premise that use of the *total of payments method* resulted in excessive charges. Those claims accordingly fail. The trial court did not err in granting summary judgment for USLIFE and Northcutt.

AFFIRMED.

BUETTNER, P.J., and ADAMS, J., concur.

---

level term credit life insurance in this state. Because the policy before us is decreasing term,

any question regarding the difference in language is not at issue here.