1998 OK 35

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Diane Louise WORSHAM, Respondent.**

**SCBD No. 4300.**

Supreme Court of Oklahoma.

May 5, 1998.

---

**16.** *See Oklahoma Bar Assn. v. Denton,* 1979 OK 116, 598 P.2d 663, 665.

**17.** *See Oklahoma Bar Assn. v. Miskovsky,* 1997 OK 55, 938 P.2d 744, 751.

Dan Murdock, General Counsel, Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Diane L. Worsham, Ardmore, pro se.

HODGES, Justice.

## I. OVERVIEW

¶ 1 Complainant, Oklahoma Bar Association (OBA), alleged one count of misconduct against attorney Diane Louise Worsham (Respondent). The complaint alleged that the Respondent had violated Rule 1.3 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. Ch. 1, App. 1–A and Rule 8.4(a), (b), and (d) of the Oklahoma Rules of Professional Conduct, 5 O.S. Ch. 1, App. 3–1 (1991) (ORPC). The Professional Responsibility Tribunal (PRT) found the Respondent's conduct did not violate Rule 1.3 of the RGPD nor Rule 8.4 of the OPRC. The PRT recommended that the complaint against the Respondent be dismissed. The OBA pursued its quest for discipline before this Court.

## II. FACTS

¶ 2 The Respondent was retained by A.J. and L.F. to represent them in suits for negligence against a licensed professional counselor. The Respondent's clients and two other

women had accused the counselor of sexual misconduct and other liable conduct. Complaints related to these same allegations were also filed against the counselor with the licensing board, resulting in revocation of the counselor's license. The local newspaper reported the revocation and gave the name of the counselor and a statement of the finding of facts. The article recited that the findings included the counselor admitting to holding himself out as a doctor without possessing a doctoral degree. The article also stated that the counselor had engaged in improper sexual contact with a patient as well as other improper sexual conduct.

¶ 3 Before contacting the Respondent, A.J. talked with a detective for the local police department. A.J. stated the possibility of her filing criminal charges continued through the course of the civil litigation. Likewise, L.F. had contacted an investigator with the local district attorney's office but decided not to press the criminal charges at that time. About the same time that A.J. and L.F. retained the Respondent, two other women filed civil suits against the counselor.

¶ 4 In November of 1996, the Respondent filed a petition on behalf of A.J. and L.F. against the counselor. In addition to the sexual misconduct, the petition alleged that the counselor was negligent. On March 20, 1997, the Respondent sent a letter to the attorney for the counselor and his insurance company offering to settle. The Respondent did not receive a response to the offer. In May of 1997, the counselor and insurance company settled with one of the women who was not Respondent's client.

¶ 5 The insurance company asserted the sexual misconduct limit of $50,000 on the liability policy and stated the total amount had been paid in the settlement of the other woman's claim. The Respondent felt that the assertion of the limit was an act of bad faith because the petition had also alleged negligence not sexually related.

¶ 6 On June 5, 1997, the Respondent sent a letter to the attorney for the counselor and his insurance company. In the letter, the Respondent stated: "This offer will remain open until June 20, 1997 at which time it is withdrawn and my client will proceed with trial preparation and will contact the District Attorney concerning the filing of criminal charges." On June 11, 1997, the Respondent again wrote a letter to opposing counsel stating: "This offer is valid until June 20, 1997. If this case cannot be settled by negotiations or during the settlement conference my client has advised she intends to have criminal charges filed against [the counselor]."

¶ 7 The Respondent testified that the letters were not intended to extort or gain something of value but for the purpose of getting the litigation "back on track" after it had stalled. The counsel for the OBA stated that he did not think that the letters were written to blackmail the counselor into paying the money out of his own pocket. The presiding master of the PRT noted, and the counsel for the OBA agreed, that the threat to file criminal charges was an empty threat because the district attorney had been previously contacted and could have filed charges without permission of either A.J., L.F., or the Respondent.

¶ 8 The PRT recommended that the complaint against the Respondent be dismissed. In its findings of fact, the PRT found that the Respondent was not making a threat but merely stating her clients' intent. The PRT further found that the ORPC and the RGDP did not specifically prohibit a lawyer from threatening criminal prosecution and that Respondent had not committed a crime so as to warrant discipline.

¶ 9 In its brief, the OBA agrees that the threat of criminal prosecution is not specifically prohibited by rules that govern the practice of law. Without elaboration, the OBA posits that the Respondent has violated Okla. Stat. § 1488 (1991) [1]. The OBA's pri-

---

1. The OBA also asserts that the Respondent violated section 1481 and 1486 of title 21. The assertion that the Respondent violated section 1481 is totally without merit. Section 1481 requires *delivery of property because of force.* *Yoder v. State*, 1972 OK CR 43, 493 P.2d 1141. The OBA has not asserted that property was transferred because of the threat, much less presented any evidence on the issue. Section 1486 requires for purposes of this proceeding the same elements as section 1488. Accordingly, there is no need to address section 1486 separately.

mary argument is that it is not good practice to allow lawyers to use the threat of prosecution in litigating a civil matter.

## III. ANALYSIS

¶ 10    The OBA has charged that the Respondent has violated Rule 1.3 of the RGDP and Rule 8.4(b) of the ORPC. Rule 1.3 of the RGDP prohibits a lawyer's conduct which is "contrary to prescribed standards of conduct." The prescribed standard of conduct which the OBA contends that the Respondent committed is set out in Rule 8.4(b) which the OBA also contends the Respondent violated.

¶ 11    Prior to 1988, attorneys in Oklahoma were governed by the Code of Professional Responsibility (Code), Okla. Stat. tit. 5, ch. 1, app. 3 (1981). DR 7–105 of the Code specifically prohibited a lawyer from threatening "to present criminal charges solely to obtain an advantage in a civil matter." This provision has no counterpart in the ORPC adopted in 1988. The committee drafting the Model Rules of Professional Conduct, after which Oklahoma's rules are modeled, deliberately omitted the specific language of DR 7–105 and any express prohibition regarding the threat to present criminal charges. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 92–363. The drafters believed that the Model Rules' general provisions sufficiently covered "extortionate, fraudulent, or otherwise abusive threats". *Id.*

¶ 12    This question was addressed by the American Bar Association's (ABA) Formal Ethics Opinion 92–363. The opinion concluded:

> The Model Rules do not prohibit a lawyer from using the possibility of presenting criminal charges against the opposing party in a civil matter, to gain relief for a client, where the criminal matter is related to the client's civil claim, the lawyer has a well-founded belief that both the civil claim and the criminal charges are warranted by the law and the facts, and the lawyer does not attempt to exert or suggest improper influence over the criminal process.

Thus the analysis below of section 1488 is equally

*Id.* at Formal Op. 94–383. The opinion noted the threat might contravene Rule 8.4 if the threat violated the criminal law of the jurisdiction. *Id.* at Formal Op. 92–363.

■■■  ¶ 13    We agree with the ABA that the threat of presenting a criminal prosecution standing alone does not explicitly violate the ORPC unless it falls under a provision prohibiting conduct not specifically addressing the threat of criminal charges. Even though Rules 3.1, 4.1, 4.4, and 8.4 do not specifically address a lawyer's threatening criminal prosecution, these rules limit certain threats. A threat of criminal prosecution without a basis in fact or law is a violation of Rule 3.1 which prohibits the assertion of frivolous claims. Rule 4.1, duty regarding truthfulness, prohibits a lawyer from threatening criminal prosecution unless the lawyer intends to proceed with the criminal charges. Rule 4.4 prohibits a lawyer from making a threat which has "no substantial purpose other than to embarrass, delay, or burden a third person...." A threat that the lawyer could influence a governmental official would violate Rule 8.4(d) and (e).

■■■  ¶ 14    Here the OBA asserts that the Respondent's threats violate Rule 8.4(b) which prohibits a lawyer from "committ[ing] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The OBA asserts that the Respondent committed the crime of blackmail under title 21, section 1488.

¶ 15    For purposes of this proceeding, section 1488 defines blackmail as (1) a verbal, written, or printed communication "threatening to accuse a person of a crime or conduct which would tend to degrade and disgrace the person accused" done with the "intent to extort or gain any thing of value from another or to compel another to do an act against his will." The PRT found that the Respondent had not committed the crime of blackmail and that the complaint should be dismissed. We agree.

¶ 16    One element of blackmail is an intent to extort. In this case, the evidence

applicable to section 1486.

shows that the Respondent did not intend to extort a settlement or any other thing of value by the letters. The Respondent, A.J., and L.F. all testified that the Respondent had no intent to extort a settlement. The Respondent's motive for the threats was to get the litigation back "on track" because it had been diverted by the insurer's imposition of the sexual misconduct limitation. The Respondent's threats were statements of her clients' intent. A *de novo* review of the record shows that the Respondent did not possess the requisite intent necessary to be guilty of the crime of blackmail.

¶ 17 Another requirement to be guilty of blackmail, in a case such as this, is that the threat must tend to disgrace or degrade the person accused. The counselor had his license revoked, the facts regarding the revocation were published in the newspaper, the counselor's improper conduct had been reported to law enforcement authorities, and the petition filed in the civil suits against the counselor were public record. There is no evidence that reporting the counselor's conduct once again to the law enforcement authorities would have subjected him to disgrace or degradation more than what already existed. Thus, this element of the crime of blackmail was not present.

¶ 18 We conclude that the Respondent's actions presented here do not constitute the crime of blackmail as alleged in the complaint, do not violate Rule 8.4 of the ORPC, and are not contrary to prescribed standards of conduct by a lawyer as required by 1.3 of the RGDP. Thus, the complaint against the Respondent is dismissed.

¶ 19 The OBA's brief states that it is concerned that lawyers could threaten charges when none are warranted. This concern is without merit because other provisions of the ORPC prohibit such conduct. As stated above, Rules 1.3, 4.1, 4.4, and 8.4(d) and (e) prohibit a lawyer from making threats which are prejudicial to the administration of justice or imply an ability to improperly influence a government official; from making threats which have no substantial purpose other than to embarrass, delay or burden; from making threats with no actual intent to follow through on the threat; and from making threats which are not well founded in law or fact. These provisions sufficiently protect from the abusive use of threats which concerns the OBA.

## IV. CONCLUSION

¶ 20 The OBA did not present clear and convincing evidence to show that the Respondent violated the ORPC or the RGDP. We agree with the PRT's finding that the Respondent's conduct was not a violation of Rule 8.4 of the Oklahoma Rules of Professional Conduct or Rule 1.3 of the Rules Governing Disciplinary Procedure. The OBA's application for costs is denied.

COMPLAINT DISMISSED; RESPONDENT EXONERATED.

¶ 21 KAUGER, C.J., SUMMERS, V.C.J., and LAVENDER, SIMMS, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

¶ 22 OPALA, J., concur in result.