2009 OK CIV APP 101

**RAVEN RESOURCES, L.L.C., and David A. Stewart and Terry P. Stewart, Plaintiffs/Appellants,**

v.

**LEGACY BANK; R. Stephen Carmack; Samuel Carmack; Lorie Carmack; Dan Haynes; Patricia Ross; Kenneth Ross; Richard Horton; Jacqueline Bradshaw; Connie Frazier; and John Does 1–10 and Persons Unknown, Defendants/Appellees.**

No. 106,203.

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 17, 2009.

---

William B. Federman, Federman & Sherwood, Oklahoma City, OK, for Appellants.

Richard P. Propester, Joe E. Edwards, Day, Edwards, Propester & Christensen, P.C., Oklahoma City, OK, for Appellees.

JOHN F. FISCHER, Judge.

¶1 Raven Resources L.L.C., its owner and managing member David A. Stewart, and his wife Terry Stewart (collectively, Raven) appeal the district court's August 1, 2008, order dismissing certain of Raven's claims against Legacy Bank (Bank).[1] The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(2), 12 O.S.2001 and Supp.2003, ch. 15, app. 1.

## BACKGROUND

¶2 Raven is an oil and gas company that maintained an account with Bank. Raven alleged that its ex-employee Michael Lee forged various documents, executed unauthorized checks on Raven's account, conducted unauthorized transactions through the Bank, and embezzled millions of dollars of Raven's money for his own use.[2] Raven alleged Lee was able to do so only because of the negligence, fraud, or collusion of Bank and its employees.

¶3 Raven's petition describes the acts of Bank and its employees acting in concert with Lee that resulted in the loss for which it seeks to recover. Raven asserts thirteen "Claims for Relief" in support of its claim against Bank: (1) breach of contract; (2) facilitating forgery; (3) gross negligence; (4) facilitating fraud; (5) aiding and abetting conversion; (6) civil conspiracy; (7) violation of Uniform Commercial Code, 12A O.S.2001 § 4–401; (8) engaging in unsafe and unsound banking practices; (9) breach of implied covenant of good faith and fair dealing; (10) the need for a declaratory judgment of rights and obligations of certain promissory notes and mortgages; (11) the need for a declaratory judgment of rights and obligations regarding a certain revolving credit agreement; (12) violation of Oklahoma Banking Code, 6 O.S.2001 §§ 712–713; and (13) facilitating money laundering.[3] Raven seeks actual and punitive damages, a declaration that certain debt instruments be declared void and statutory penalties.

¶4 Bank filed a motion to dismiss Raven's petition arguing various grounds. On August 1, 2008, the district court denied Bank's motion to dismiss the 2nd, 4th, 7th, 10th, and 11th grounds for recovery. The court granted Bank's motion with respect to Raven's 1st, 3rd, 5th, 6th, 9th, and 12th grounds for recovery finding that they were based on fraud and had not been pled with the required particularity but granted Raven leave to amend. The merits of this appeal concern the district court's dismissal of Raven's 8th (unsafe and unsound banking practices) and 13th (facilitating money laundering) grounds for recovery (collectively, the Banking Claims), on the basis that no private right of action existed to enforce these claims. The district court dismissed these claims without leave to amend presumably because it concluded that "the defect [could not] be remedied." 12 O.S. Supp.2004 § 2012(G). Consequently, the dismissal of the Banking Claims finally determined Bank's liability as to those grounds for recovery.

¶5 On August 14, 2008, prior to the deadline for amendment, Raven voluntarily dis-

---

1. The petition also named Bank's board of directors, officers, and other employees as individual defendants.

2. Lee pled guilty to federal charges of fraud and money laundering in March 2008.

3. Although the form of relief differs in some respects, the amount of actual damage Raven seeks is the same, the money embezzled by Lee. Further, Raven's right to recover appears to arise from the same transactions and occurrences by which Lee embezzled money from Raven's accounts at Bank. Because the factual record was not developed, we are unable to determine whether Raven's petition asserts thirteen separate statements of its claims, that is, thirteen separate theories of liability in support of one claim for relief against Bank or multiple claims for relief. *See* 12 O.S. Supp.2004 § 2012(E)(2).

See also *Rogers v. Meiser*, 2003 OK 6, n. 2, 68 P.3d 967, 969 n. 2 (italics in original; footnotes omitted) ("The order granting defendants' motion to dismiss uses the phrase 'causes of action' rather than 'theory or theories of liability.' *'Only a single cause of action can be predicated on the same set of facts*, but different remedies and theories of liability may be pressed in support of each claim alleged.' "); *Fleet v. Sanguine, Ltd.*, 1993 OK 76, n. 48, 854 P.2d 892, 901 n. 48. ("When a claim for damages arises from one occurrence or transaction, it affords the plaintiff but a single cause of action."). However, we need not decide that issue. This Opinion is confined to the district court's disposition of Bank's motion to dismiss concerning what Raven describes as its 8th and 13th "Claims for Relief."

missed without prejudice all grounds for recovery still pending in the district court, and all grounds for recovery the court had previously dismissed with leave to amend. Because Raven did not amend claims 1, 3, 5, 6, 9 and 12 within the time allowed by the district court, they would have been deemed to be dismissed with prejudice pursuant to section 2012. However, sub-paragraph (G) of section 2012 states that "within the time allowed by the court for filing an amended pleading, a plaintiff may voluntarily dismiss the action without prejudice." Consequently, Raven's voluntary dismissal before the amendment period expired avoided dismissal with prejudice of claims 1, 3, 5, 6, 9 and 12. Raven appeals the order dismissing its Banking Claims.

## STANDARD OF REVIEW

 ¶ 6 In every appeal, an appellate court is required to inquire into its jurisdiction. *Broadway Clinic v. Liberty Mut. Ins. Co.*, 2006 OK 29, ¶ 25, 139 P.3d 873, 880; *Cray v. Deloitte Haskins & Sells*, 1996 OK 102, ¶ 7, 925 P.2d 60, 62. "Determination of jurisdiction is a question of law." *State ex rel. Cartwright v. Okla. Ordnance Works Auth.*, 1980 OK 94, ¶ 4, 613 P.2d 476, 479. Further, appellate review of a motion to dismiss involves a de novo consideration as to whether the petition is legally sufficient. *Indiana Nat'l Bank v. State Dep't of Human Servs.*, 1994 OK 98, ¶ 2, 880 P.2d 371, 375. Finally, a district court's construction of statutes also presents questions of law that are reviewed *de novo*. *State ex rel. Okla. State Dep't of Health v. Robertson*, 2006 OK 99, ¶ 5, 152 P.3d 875, 877; *Fulsom v. Fulsom*, 2003 OK 96, ¶ 2, 81 P.3d 652, 654.

## DISCUSSION

¶ 7 The initial issue raised in this appeal is whether the district court's order dismissing Raven's Banking Claims, clearly interlocutory at the time it was entered, became appealable as a result of Raven's voluntary dismissal of all other claims. Bank's response to Raven's petition in error seeks dismissal of the appeal for lack of an appealable order.[4] Bank argues that Raven's subsequent dismissal of all remaining claims cannot convert the interlocutory dismissal of the Banking Claims into an appealable order, and that order is not appealable unless certified by the district court for immediate appeal pursuant to 12 O.S.2001 § 994.[5] The district court did not certify its order dismissing the Banking Claims for immediate appeal, and the record does not show that Raven requested such certification. Bank further contends that, if Raven's appeal is not dismissed, the district court's dismissal of the Banking Claims should be affirmed.

### I. Jurisdiction

¶ 8 Bank's jurisdictional challenge raises an issue not previously decided in Oklahoma: whether a party may appeal an order that is not appealable when entered but becomes potentially appealable as a result of subsequent voluntary action by that party. This Court's jurisdiction is limited to appeals from judgments, 12 O.S.2001 § 952(a), final orders, 12 O.S.2001 § 952(b)(1), orders regarding provisional remedies, 12 O.S.2001 § 952(b)(2), certain interlocutory orders, 12 O.S.2001 § 993, interlocutory orders certified for appeal by the trial court, 12 O.S.2001 § 952(b)(3), and interlocutory orders in multi-party multi-claim cases certified for imme-

4. The Supreme Court deferred disposition of Bank's jurisdictional argument to the decisional stage of this appeal.

5. Section 994(A) provides:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment, decree, or final order as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of a final judgment, decree, or final order. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the final judgment, decree, or final order adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk.

diate appeal, 12 O.S.2001 § 994.[6] When the district court's August 1, 2008, order dismissing Raven's Banking Claims was entered, it was not appealable because it satisfied none of these statutory requirements. Bank argues that Raven cannot make that order appealable by dismissing all of its remaining grounds for recovery.

## A. Oklahoma Law

■ ¶ 9 As an initial matter, we note that Oklahoma jurisprudence has a long history of recognizing a plaintiff's right to control his or her own case. As early as 1932, the Oklahoma Supreme Court held:

> If a litigant, by reason of the ruling of the trial court during the progress of the trial, feels that he has been prejudiced by such ruling, and by reason thereof has not been permitted to fully and fairly present his theory of the issues to the court or jury, he should have the unqualified right, such as was granted to him under the common law, to control his action and to dismiss without prejudice before the question is finally submitted to the court or jury.

*Carpenter v. Renner,* 1932 OK 487, ¶ 8, 158 Okla. 153, 12 P.2d 688, 689. *See also Hubbard v. Hubbard,* 1942 OK 210, 190 Okla. 679, 126 P.2d 524; *Butler v. Prokop,* 1958 OK 11, 321 P.2d 400. This common law principle has been codified, at least in part. Title 12 O.S. Supp.2004 § 683 provides that a plaintiff may dismiss without prejudice at anytime before final submission of the case to the judge or jury, and 12 O.S. Supp.2004 § 684 provides that a plaintiff may dismiss prior to trial on payment of costs or at anytime with the consent of all other parties. Bank's argument that Raven cannot appeal without the district court's certification pursuant to section 994 must overcome Raven's common law and statutory right to dismiss.

¶ 10 As previously stated, the issue raised by Bank's motion to dismiss has not been decided. *Patmon v. Block,* 1993 OK 53, 851 P.2d 539, however, decided an almost identical issue. Patmon sued two physicians, Drs. Block and Rahhal, for malpractice resulting from an abdominal surgery. The district court granted summary judgment in favor of Dr. Block on March 26, 1992. When that judgment was entered, 12 O.S.1991 § 1006, precluded an appeal without trial court certification of the need for immediate appellate review. The judgment in favor of Dr. Block was not so certified. On April 7, 1992, Patmon's remaining claim against Dr. Rahhal was dismissed without prejudice for failure to prosecute. Within thirty days from that dismissal, Patmon appealed the judgment in favor of Dr. Block.

¶ 11 On appeal, Dr. Block argued that the district court's dismissal of Patmon's remaining claim without prejudice did not render the prior judgment a final order because Patmon could still file a new action against Dr. Rahhal. *Patmon* at ¶ 8, 851 P.2d at 543. The Supreme Court rejected this argument holding that "an order of dismissal that terminates an action without prejudice is appealable even though a new suit might later be brought on the same claim against the same defendants." *Id.* at ¶ 9, 851 P.2d at 543.[7] The order dismissing Dr. Rahhal entered subsequent to the order appealed "mark[ed] the disposition of all claims and the settlement of all issues among the parties." *Id.* at ¶ 7, 851 P.2d at 543. It left only the order granting Dr. Block's motion for summary judgment.[8] The Supreme Court has jurisdiction to "reverse, vacate or modify judgments of the district court." 12 O.S.2001 § 952(a). "Appeal time for review of the court's summary judgment in Dr. Block's

---

6. Specific statutes may also confer appellate jurisdiction. *See e.g.,* 58 O.S.2001 § 721, (authorizing appeal from certain orders in probate proceedings). None of those statutes is applicable in this case.

7. The United States Supreme Court reached the same conclusion in *United States v. Wallace and Tiernan Co.,* discussed in paragraph 18 of this Opinion.

8. Patmon also sued the hospital for negligent hiring and credentialing. The district court granted the hospital's motion for summary judgment prior to the enactment of 12 O.S.1991 § 1006. The law in effect when that judgment was entered required appeal within thirty days. Consequently, Patmon's attempt to include the hospital judgment in her appeal of the Block judgment more than four years after judgment for the hospital was entered was dismissed as untimely filed.

favor began to run with the filing of the trial court's April 7 dismissal order. *That order was the first appealable event in Patmon's action after § 1006 became effective as law.* *Patmon* at ¶ 9, 851 P.2d at 544 (emphasis in original). Consequently, the dismissal of Patmon's last remaining claim converted the previously unappealable judgment in favor of Dr. Block into an appealable order.

¶ 12 *Patmon* was recently cited with approval in *Southwestern Bell Yellow Pages, Inc. v. Barr,* 2008 OK 46, 187 P.3d 718, for the proposition that the time to appeal begins to run from an appealable order or event even though the order under review was not appealable at the time it was entered.[9] Unlike the majority of the federal circuits discussed in section I.B. of this Opinion, it is clear from *Patmon* that Oklahoma does not consider the potential re-filing of a dismissed claim to be a bar to appellate review.[10] The only procedural difference between this case and *Patmon* is that the dismissal that rendered the previous interlocutory order appealable was filed by Raven rather than by the district court. We find this distinction immaterial.

■■■ ¶ 13 Consequently, based on the analysis in *Patmon,* we find that the voluntary dismissal of Raven's non-Banking Claims converted the order granting Bank's motion to dismiss the Banking Claims into a final order. A final order is one that affects "a substantial right in an action, when such order, in effect, determines the action and prevents a judgment. . . ." 12 O.S.2001 § 953.

After Raven's dismissal of its non-Banking Claims, the order granting Bank's motion to dismiss conclusively determined Bank's liability on the Banking Claims, left Raven without any relief and prevented Raven from proceeding further. *See Hammonds v. Osteopathic Hosp. Founders Ass'n,* 1996 OK 54, ¶ 3, 917 P.2d 6, 7 (defining "final order" in those terms).[11] As in *Patmon,* Raven's voluntary dismissal of its non-Banking Claims was the first appealable event in this case. Contrary to Bank's argument, "an appeal need not always be the appellant's sole remedial avenue of relief to make a prejudgment order appealable as final under § 953." *Gilliland v. Chronic Pain Assocs., Inc.,* 1995 OK 94, ¶ 7, 904 P.2d 73, 76.

■■■ ¶ 14 Further, despite Bank's contention that Raven cannot appeal without the district court's permission, certification of the order granting Bank's motion to dismiss pursuant to § 994 may not have been available. Although we do not decide the issue, all of Raven's grounds for recovery appear to based on the same transactions or occurrences as the Banking Claims, *i.e.,* Lee's embezzlement of Raven's funds held by Bank. If that is true, the district court could not have certified its dismissal of the Banking Claims for immediate appeal.

A judgment is unsuitable for § 994 certification when the court disposes of but a portion of the contest by leaving unresolved any issue on the merits of the partly-decided claim. Nor can the trial court advance an order if the unadjudicated

---

9. In *Barr,* the Court held that an order dismissing the defendant/appellant's third-party claim "completely adjudicat[ed]" a legally severable claim," and therefore could have been certified for immediate appeal pursuant to § 994. The dismissal order was not certified and instead the appellant moved for reconsideration. That motion was denied but the order denying reconsideration was certified pursuant to § 994. The Court refused to hear the appeal of both orders because the petition in error was filed more than thirty days after the appealable event-the certification order-was filed.

10. *See also Martin v. Johnson,* 1998 OK 127, ¶ 17, 975 P.2d 889, 893.

11. Raven's voluntary dismissal is distinguishable from the plaintiff's action in *City of Lawton v. Int'l Union of Police Ass'ns,* 2002 OK 1, 41 P.3d

371. In that case, the City appealed from an order granting summary judgment as to liability but reserving the issue of damages. The Supreme Court dismissed the appeal because it was not taken from an appealable order. The Court also held that the City failed in its attempt to cure this defect by filing a stipulation that no issues remained after its petition for certiorari was filed because the stipulation had not been tendered to the trial court and was not made until after the order appealed was entered. "An appellate court is confined to that record which was before the nisi prius court *at the time of its decision on review."* *Id.* at ¶ 7, 41 P.3d at 375. In this case, all of the action taken by Raven necessary to make the dismissal of the Banking Claims appealable was done in the district court prior to the filing of its petition in error.

claim(s) arise from the same transaction or occurrence as the adjudicated claim —— ie. the trial court must have adjudicated some legally severable claim which was completely decided. *Oklahoma City Urban Renewal Auth. v. City of Oklahoma City,* 2005 OK 2, ¶ 11, 110 P.3d 550, 557. In contrast, Patmon's negligent hiring claim against the hospital was separate from her medical negligence claim against the doctors rather than an alternative theory of liability for recovery of the same damages from a single wrong. *"They are clearly distinct causes of action founded on separate consecutive rather than concurring transactions or wrongs." Patmon,* 1993 OK 53 at ¶ 9, 851 P.2d at 544 (emphasis in original).

¶ 15 Even if the order dismissing the Banking Claims was capable of certification, Bank's construction of section 994 as Raven's only avenue of appeal leads to a procedural Wewoka Switch [12] for which we find no authority. If the order is one described in section 994, by definition, it is not appealable absent that certification. *Barr,* 2008 OK 46, at ¶ 0, 187 P.3d at 718. It remains "subject to revision any time before all of the claims of all of the parties have been finally adjudicated." *Oklahoma City Urban Renewal Auth.,* 2005 OK 2 at ¶ 10, 110 P.3d at 557. The decision to certify an order for immediate appeal pursuant to section 994 requires an exercise of the district court's discretion and the refusal to certify cannot be appealed. *See* Okla. Sup.Ct. R. 1.50, 12 O.S. 2001 ch. 15, app. 1 (interlocutory order not appealable by right may only be reviewed if certified for appeal by the trial judge). Therefore, without certification, Raven's only option, in Bank's view, would be to proceed to judgment on its non-Banking Claims. Claim and issue preclusion would prevent Raven from dismissing its remaining claims and re-filing a new action that included the Banking Claims. "[O]nce a court has decid-ed an issue of fact or law necessary to its judgment, that issue may not be relitigated between the same parties or their privies in a suit upon a different cause of action." *Panama Processes, S.A. v. Cities Serv. Co.,* 1990 OK 66, n. 27, 796 P.2d 276, 283 n. 27. *See also Nat'l Diversified Bus. Servs., Inc., v. Corp. Fin. Opportunities, Inc.,* 1997 OK 36, 946 P.2d 662 (holding that after determination of the forum selection clause issue and voluntary dismissal by the plaintiff, that issue cannot be relitigated in subsequent suit). Further, claim preclusion would bar relitigation of issues that either were or could have been litigated in a prior action terminated on the merits. *State ex rel. Moshe Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 20, 61 P.3d 234, 245.[13] Consequently, Bank's construction of section 994 would not only deprive Raven of its common law authority to "control [its] action," and its statutory right to dismiss at this stage of the proceedings, but also foreclose Raven's resort to the appellate jurisdiction of this Court established by art. VII § 4 of the Oklahoma Constitution.

## B. Federal Law

¶ 16 Nonetheless, Bank's argument is not without support. Bank acknowledges that the jurisdictional issue has not been previously decided in Oklahoma and relies on federal cases in support of its contention that the August 1, 2008 order is not subject to appellate review. Bank correctly observes that the basic requirements for an appealable order in multiple party, multiple claim cases found in 12 O.S.2001 § 994(A) were "modeled verbatim" from Federal Rule of Civil Procedure 54(B). *Brandt v. Joseph F. Gordon Architect, Inc.,* 1999 OK 67, n. 1, 998 P.2d 587, 589 n. 1. Bank's argument is premised on the established principle that if a state statute is patterned after a federal statute, federal jurisprudence may be instructive when interpreting the Oklahoma statute. *See Barnett v. Simmons,* 2008 OK 100, ¶ 16,

---

12. The term "Wewoka Switch" describes an unreconcilable conundrum and is derived from the description of missing goods shipped by rail during the 1920s oil boom as probably being caught in the railroad switching area located in Wewoka, Oklahoma, *i.e.,* the Wewoka Switch. *See King v. King,* 2005 OK 4, ¶ 20, 107 P.3d 570, 579.

13. Just as we do not decide whether Raven's petition contained one claim for relief or more than one claim for relief, we do not decide whether Raven may refile any of its voluntarily dismissed grounds for recovery based on our disposition of this appeal.

197 P.3d 12, 18; *Payne v. Dewitt*, 1999 OK 93, ¶¶ 8–9, 995 P.2d 1088, 1092–93.

¶ 17 A review of federal cases reveals two distinct views on whether an uncertified interlocutory order may be appealed after a dismissal without prejudice of all remaining claims and parties. The majority of the federal circuits follow the rule announced in *Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298 (5th Cir.1978). Those courts hold that voluntary dismissal without prejudice does not dispose of a claim because the dismissing party remains free to file another complaint. Therefore, interlocutory orders remain non-final after dismissal.[14]

¶ 18 The Sixth and Eighth Circuits find appellate jurisdiction to review uncertified interlocutory orders in similar circumstances. *See Hope v. Klabal*, 457 F.3d 784, 790 (8th Cir.2006); *Hicks v. NLO, Inc.*, 825 F.2d 118, 120 (6th Cir.1987). The Eight Circuit *Hope* decision relied in part on *United States v. Wallace and Tiernan Co.*, 336 U.S. 793, 69 S.Ct. 824, 93 L.Ed. 1042 (1949). In *Wallace*, the Supreme Court analyzed its jurisdiction pursuant to 15 U.S.C. § 29 to hear an appeal after the government dismissed a case without prejudice, then appealed an earlier unfavorable evidentiary ruling. Section 29 requires a "final judgment" before appellate review. The *Wallace* court held:

> That the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit so far as the District Court was concerned. The motion to dismiss the appeal is overruled.

*Id.* at 794 n. 1, 69 S.Ct. 824 (citations omitted). *Wallace* holds that a voluntary dismissal without prejudice of all remaining issues may convert a prior interlocutory order into an appealable order.

¶ 19 There is, therefore, no consensus federal view on this issue. However, the mi-nority view is supported by United States Supreme Court precedent. Further, the minority view is consistent with Oklahoma precedent and Oklahoma's long-standing recognition of a plaintiff's common law right to control the action. Consequently, we find Bank's argument based on federal law unpersuasive.

¶ 20 Although *Carpenter*, 1932 OK 487, 12 P.2d 688, and the common law cases following that decision were decided prior to the enactment of the Oklahoma Pleading Code and 12 O.S.2001 § 994, *Patmon's* holding that a subsequent event may render a previously unreviewable decision appealable was not. The fact that Raven's dismissal rather than court dismissal constituted the appealable event does not change the analysis employed in *Patmon*. Consequently, this Court has jurisdiction of Raven's appeal, and Bank's request for dismissal is denied.

## II. Plaintiff's Banking Claims

### A. Unsafe Banking Practices

¶ 21 Raven's petition asserted a claim for "unsafe or unsound banking practices" pursuant to 6 O.S.2001 § 204. Subparagraph (A)(10) of that statute gives the State Banking Commissioner power to order banks to "cease and desist from engaging in any unsafe or unsound banking or trust practice." Sub-section (A)(11) gives the Commissioner power to require that banks "pay civil money penalties under the same circumstances and conditions applicable to imposition of civil money penalties by the primary federal bank regulatory agency of the bank."

¶ 22 Oklahoma has adopted a modified version of the test set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether a legislative enactment authorizes a private cause of action. *Holbert v. Echeverria*, 1987 OK 99, ¶¶ 7–8, 744 P.2d 960, 963.[15] The test states

---

14. *See Chappelle v. Beacon Commc'ns Corp.*, 84 F.3d 652, 654 (2nd Cir.1996); *Horwitz v. Alloy Automotive Co.*, 957 F.2d 1431, 1435–36 (7th Cir.1992); *Concha v. London*, 62 F.3d 1493, 1506–07 (9th Cir.1995); *Heimann v. Snead*, 133 F.3d 767, 769 (10th Cir.1998); *State Treasurer of Michigan v. Barry*, 168 F.3d 8 (11th Cir.1999). Many of the same courts allow appeal when the dismissal is with prejudice, and no parties or issues remain after the dismissal.

15. Although *Holbert's* holding has been superceded by a change in the applicable statute, *see Walls v. Am. Tobacco Co.*, 2000 OK 66, 11 P.3d 626, the modified *Cort* test is still employed for determining the existence of a private cause of

that a cause of action can be inferred from a public-law statute only if: (1) the plaintiff is one of the class for whose special benefit the statute was enacted; (2) there is some indication of legislative intent, explicit or implicit, suggesting that the legislature wanted to create a private remedy; and (3) implying a remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme. *Id.* The class for whose benefit the statute was enacted should be given a narrow construction. *Walker v. Chouteau Lime Co., Inc.,* 1993 OK 35, ¶ 3, 849 P.2d 1085, 1086.

 ¶ 23 With respect to Raven's claim, section 204 does not provide a benefit to any class of persons more limited than the entire public at large. The mere state of being "especially harmed" as the result of a statute's violation does not make one a member of a special class the act might seek to protect. *Holbert,* 1987 OK 99 at ¶ 9, 744 P.2d at 963. To adopt a broad construction for establishing a class would render the first factor of *Cort* virtually meaningless. *Id.* When a statute is created for the benefit of the public at large, no special class is created simply because a remedy for injured persons is fashioned. *Id.*

¶ 24 Even if we assume that Raven can satisfy the first *Cort* factor, it cannot satisfy the second. Section 204 contains no explicit private remedy, and its provisions imply the opposite. The Legislature authorized the Banking Commissioner to issue cease and desist orders in specialized circumstances within a regulated industry, and to impose regulatory penalties consistent with the federal bank regulation scheme. We find no indication that the Legislature intended to create a private right to enjoin unsound

banking practices or intended parallel private enforcement of the statute.

 ¶ 25 Finally, even though the Banking Commissioner is granted the power to impose regulatory penalties, implying an intent to create private tort damages for the same acts is inconsistent with the underlying purposes of the legislative scheme.[16] Raven has not demonstrated any compatibility between the civil penalties the Banking Commissioner is authorized to impose and the damages it seeks to recover. We find that 6 O.S.2001 § 204 does not provide a private cause of action or remedy based on "unsound banking practices."

## B. Money Laundering

 ¶ 26 Raven's petition also asserted a claim for money laundering against Bank. Money laundering is a violation of federal criminal law. *See* 18 U.S.C. §§ 1956–1957. A private right of action pursuant to a federal criminal statute is rarely implied. *Chrysler Corp. v. Brown,* 441 U.S. 281, 316, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979). Where a private right of action has been implied, "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Id.* (quoting *Cort,* 422 U.S. at 79, 95 S.Ct. at 2088). The *Cort* test is applicable in analyzing whether a private cause of action is created by a federal statute. *Id.*

¶ 27 Analyzing 18 U.S.C. §§ 1956–1957 pursuant to the *Cort* test, it is evident the statutes do not provide a benefit to any class of persons more limited than the entire public at large, and we find no discernible congressional intent in the statutes, either explicit or implicit, to create a private right of action for money laundering.[17]

action. *See Nichols Hills Physical Therapy v. Guthrie,* 1995 OK CIV APP 97, 900 P.2d 1024.

16. Even in cases where a commission has the power to order monetary sanctions or refunds to an affected customer, this does not necessarily translate into a private right to independently seek the same remedy. *See Jennings v. Globe Life & Acc. Ins. Co. of Okla.,* 1996 OK 85, ¶ 13, 922 P.2d 622, 626 (right of insurance commissioner to compel an insurer to refund consumer credit insurance overcharges did not imply a private right of action).

17. A number of federal district courts have reached the same conclusion. *See Dubai Islamic Bank v. Citibank, N.A.,* 126 F.Supp.2d 659, 668 (S.D.N.Y.2000) (examination of [the *Cort* ] factors makes clear that 18 U.S.C. § 1956 does not give rise to a private right of action); *Pacheco v. Martinez,* 515 F.Supp.2d 773, 787 (S.D.Tex.2007) (federal courts have not recognized a private cause of action for the money laundering statute); *Simmons v. Simmons,* 2008 WL 4663157, *2 (D.S.C.2008) (holding that Plaintiff's attempts to bring action under either the federal mail fraud or money laundering statutes, his claim

## CONCLUSION

¶ 28 Neither 6 O.S.2001 § 204 nor 18 U.S.C. §§ 1956–1957 provide a private right of action that would support Raven's Banking Claims based on alleged unsound banking practice or money laundering. Therefore we affirm the decision of the district court dismissing those claims.

¶ 29 **AFFIRMED.**

GOODMAN, P.J., and WISEMAN, J., concur.

must fail); *Thompson v. Kramer,* 1994 WL 725953 at *15 (E.D.Pa.1994) ("These statutes provide by their plain language for criminal penalties but not for private causes of action....").