2017 OK CIV APP 57

**Edward Arden BLAIR, James Thomas Blair, Robert Pierson Blair, James Lowden Brown and Frances Elizabeth Crawford Stroud, Plaintiffs/Appellees,**

**v.**

**NATURAL GAS ANADARKO COMPANY; HW Allen Co., LLC; Stephen J. Jatras and Richard Wright, Co-Trustees of Stephen J. Jatras Property Trust Dated 8/17/1988; Cove Petroleum Corporation; L.H.H., INC.; Ari-Mex Land Company; Patricia W. Wheeler; Zenergy, Inc., f/k/a Zinke & Trumbo, Ltd.; and Neil A. Kilbane, Defendants/Appellants,**

**and**

**The Unknown Heirs and Devisees of Stephen J. Jatras, Deceased; Agate Petroleum, Inc.; and Lexington Energy Company, Defendants.**

**Case Number: 113496**

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 12/21/2016

Mandate Issued: 11/14/2017

Rehearing Denied May 25, 2017

Brady L. Smith, MAHAFFEY & GORE, P.C., Oklahoma City, Oklahoma, for Plaintiffs/Appellees, Edward Arden Blair, James Thomas Blair, Robert Pierson Blair, and James Lowden Brown.

Michael E. Smith, HALL, ESTILL, HARDWICK GABLE, GOLDEN & NELSON, P.C., Oklahoma City, Oklahoma, for Defendants/Appellants, Natural Gas Anadarko Company; HW Allen Co., LLC; Cove Petroleum Corporation; L.H.H., Inc.; Ari-Mex Land Company; Ameritrust Corporation, an Oklahoma Trust Company, Trustee of the Stephen J. Jatras Oil & Gas (f/k/a Stephen J. Jatras Property Trust Dated 8/17/1988); and Patricia Wheeler.

James U. White, Jr., Tulsa, Oklahoma, and Jon E. Brightmire, DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P., Tulsa, Oklahoma, for Defendants/Appellants, Zenergy, Inc., f/k/a Zinke & Trumbo, LTD. and Neil Kilbane.

1. Ameritrust Corporation, an Oklahoma Trust Company, was not named in the trial court's order. However, it has entered an appearance in this appeal.

2. Although the trial court's order did not resolve all issues between all parties, claims against the remaining defendants were subsequently dismissed without prejudice, making the order before us final in all respects. See, *Raven Resources,*

JERRY L. GOODMAN, CHIEF JUDGE:

¶1 Natural Gas Anadarko Company, et al., (Defendants) appeal the trial court's May 12, 2014, order granting summary judgment to Plaintiffs Edward Arden Blair, James Thomas Blair, Robert Pierson Blair, James Lowden Brown, and Frances Elizabeth Crawford Stroud.[1] Plaintiffs sought cancellation of an oil and gas lease held by Defendants and an order quieting title to the well located within the lease. Defendants claimed the lease did not expire and denied Plaintiffs were entitled to summary judgment. The trial court, following an evidentiary hearing, held that by operation of the lease terms, the leasehold had expired. The trial court denied relief to Defendants and granted judgment to Plaintiffs. The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(1), 12 O.S.2011, Supp. 2013, Ch. 15, App. 1 and *In Re Amendments to Oklahoma Supreme Court Rules,* 2013 OK 67.[2]

¶2 Based on our review of the facts and applicable law, we reverse and remand with directions.

## BACKGROUND

¶3 The parties dispute whether a Beaver County oil and gas lease terminated because, for three 90-day periods, it was unprofitable.

¶4 The lease was executed on June 12, 1981, filed of record June 18, 1981, and covers the E/2 of Section 33-1N-21ECM in Beaver County. The subject well, Blair No. 1-33, is located in this section. The primary term of the lease was three years from June 20, 1981. Plaintiffs own an undivided one-half interest in the lease. Defendants are assignees of the lease and operate the well.

¶5 The lease is represented[3] to contain the following language:

*L.L.C. v. Legacy Bank,* 2009 OK CIV APP 101, ¶13, 229 P.3d 1273, 1279.

3. A copy of the lease is included in the appellate record, and appears to be a "Producers 88" Form, but the included copy is effectively illegible. We quote the lease as set out in Plaintiffs' November 26, 2013, Motion for Summary Judgment, p. 2.

If, after the expiration of the primary term of this lease, ... production on the leased premises shall cease from any cause ... this lease shall not terminate provided lessee resumes or commences operations for the drilling or reworking of a well within ninety (90) days from the date ... cessation, and this lease shall remain in force and effect during the prosecution of such operations, and if production results therefrom, then as long as such production continues or the well or wells are capable of producing.

¶6 It is uncontested that the well was completed and producing during the initial three-year term of the lease, and Plaintiffs admit that "from July 1, 2012 through December 31, 2012, there was no period when the Blair No. 1-33 Well ceased to **physically** produce oil for 90 consecutive days." (Emphasis in original).[4] Plaintiffs contend, however, that following three chosen 90-day spans of time, the well did not cumulatively produce in paying quantities.[5] Therefore, Plaintiffs argue the 90-day cessation of production provision, set out above, operated to terminate the lease.

¶7 Plaintiffs did not allege, nor did the trial court address, any violations of any explicit or implied duties of Defendants to market the oil produced from Blair 1-33, nor that any other provision of the lease was violated.

¶8 Seeking summary judgment, Plaintiffs presented evidentiary material showing the cumulative lifting costs and income from the sale of oil from the well. Plaintiffs argue that during specific 90-day periods, the total lifting costs at the end of those 90 days exceeded the value of the oil sold, causing the cessation of production clause to operate and terminate the lease. Defendants filed a response and argued the evidentiary material reflects that there were several times during those periods in which the well did produce

in paying quantities, which "interrupted the cessation of production" and therefore there was never any consecutive 90-day span in which production ceased completely. They then requested summary judgment in their favor.

¶9 A hearing on both summary judgment motions was held on March 25, 2014. All parties presented arguments and evidentiary material in support of their respective positions. The trial court entered an order, filed May 12, 2014, containing the following findings of fact.

4. During the ninety (90) day period from July 18, 2012 through October 15, 2012 ... lifting expenses for the [well] exceeded the value of the oil produced *during such time period.*

5. During the ninety (90) day period from August 1, 2012 through October 29, 2012 ... lifting expenses for the [well] exceeded the value of the oil produced *during such time period.*

6. During [those two periods], the [well] *was not capable of producing in paying quantities*, and Defendants did not undertake any additional drilling or reworking operations on the [well] during such time periods. (Emphasis added).

¶10 The trial court concluded the lease was terminated by its own terms, holding the parties' negotiated cessation of production clause controlled over the common law doctrine of temporary cessation, citing *Hoyt v. Cont'l Oil Co.*, 1980 OK 1, 606 P.2d 560. The trial court distinguished the cases of *Pack v. Santa Fe Minerals,* 1994 OK 23, 869 P.2d 323, and *Voiles v. Santa Fe Minerals, Inc.*, 1996 OK 13, 911 P.2d 1205, holding these cases dealt with cessation of production as a result of a failure to market gas, which is not alleged. The trial court concluded the lease expired of its own terms, was therefore cancelled, determined Defendants no longer had

---

4. R. Tab 8, Plaintiffs' Combined Reply to Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment and Response to Defendants' [] Motion for Summary Judgment, January 9, 2014, p. 4.

5. The trial court did not consider the lack of production from December 21, 2012, to March

20, 2013, holding the doctrine of obstruction was in effect because of the filing of Plaintiffs' suit on February 12, 2013. See, *Jones v. Moore*, 1959 OK 23, ¶0, 338 P.2d 872, 873 (Syl. by the court). See, also, *Hoyt v. Cont'l Oil Co.*, 1980 OK 1 at ¶4, 606 P.2d 560, 562. This was correct.

any right, title, or interest in the lease, and quieted title of the mineral estate in Plaintiffs. The trial court gave judgment to Plaintiffs and denied Defendants' motion for summary judgment.

¶ 11 Defendants appeal.

## STANDARD OF REVIEW

¶ 12 We review the trial court's order granting summary judgment under a de novo standard. *Wathor v. Mutual Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 4, 87 P.3d 559, 561.

## ANALYSIS

¶ 13 Plaintiffs' petition does not allege the lease expired as a result of failure to produce in paying quantities during the primary or secondary term of the lease. Rather, they allege the lease terminated by operation of the 90-day cessation of production clause contained within the habendum clause.

¶ 14 But for the term of the cessation of production clause, the language in the Blair lease, quoted above, tracks the language of the cessation of production clause quoted in *Hoyt*:

The cessation of production clause considered here states: "If, after the expiration of the primary term ... production ... shall cease from any cause ..." After the primary term, the effect of the cessation of production clause is to modify the habendum clause and to extend or preserve the lease while the lessee resumes operations designed to restore production. If the lessee fails to resume operations within the 60-day period provided in this clause neither the cessation of production clause or the habendum clause is satisfied and the lease terminates upon the expiration of the given time period. ...

*Hoyt v. Cont'l Oil Co.*, 1980 OK 1, ¶ 10, 606 P.2d 560, 563. This is the primary case relied on by Plaintiffs and the legal basis for the trial court's decision.

¶ 15 We disagree. We find *Pack v. Santa Fe Minerals*, 1994 OK 23, 869 P.2d 323, to be dispositive. Further, we hold the trial court erred in its finding that production had ceased during the 90-day spans alleged by Plaintiffs.

¶ 16 *Pack* held:

This Court has long held that the terms "produced" and "produced in paying quantities" have substantially the same meaning. *State ex rel. Commissioners of the Land Office v. Carter Oil Co. of West Virginia*, 336 P.2d 1086 (Okla.1958). Therein, we construed a typical habendum clause which extended the lease past its ten-year primary term as long thereafter as oil or gas is produced in paying quantities. We held that in order to extend the fixed term of ten years "and acquire a limited estate in the land covered thereby the lessee must have found oil or gas upon the premises in paying quantities by completing a well thereon prior to the expiration of such fixed term." 336 P.2d at 1094.

*Pack*, at ¶ 8, at 326.

¶ 17 It is uncontested that the Blair 1-33 well was completed and was producing during the three-year primary term. Therefore, the habendum clause operated to extend the term of the lease past the primary term, granting the lessees a limited estate in Plaintiffs' land as long as oil is produced in paying quantities. See, *Townsend v. Creekmore-Rooney Co.*, 1958 OK 265, ¶ 6, 332 P.2d 35, 37. *Pack* continues:

[ ]The Court then rejected the lessors' argument that production in paying quantities required the lessees to not only complete a well capable of producing in paying quantities but also remove the product from the ground and market it. *Thus, where a well was completed and capable of producing in paying quantities within the primary term, the lease continued, so far as the habendum clause was concerned, as long as the well remained capable of producing in paying quantities, regardless of any marketing of the product. ...*

*Pack* at ¶ 8, at 326 (footnote omitted, emphasis added). The Blair 1-33 well's production capability, as shown by the evidentiary material, caused the lease to continue under the habendum clause, even though Defendants did not market the product from time to time. Again, this is not alleged by Plaintiffs as the reason for termination.

¶ 18 At some point in the life of the Blair well, Plaintiffs admitted that the well continued to physically produce, but alleged that on several occasions, the cumulative value of 90 days' worth of that production did not exceed 90 days' cumulative total of the lifting costs. Plaintiffs did not allege that the well had completely ceased production. Rather, they simply alleged the well was not profitable at times. Plaintiffs' motion for summary judgment argues that:

> Simply producing hydrocarbons from the leased premises will not perpetuate the oil and gas lease in the lease's secondary term.[6]

Because "the terms 'produced' and 'produced in paying quantities' have substantially the same meaning" *Pack*, *id.*, Plaintiffs argue the lack of profit equates to a lack of production, even though it is admitted the well was capable of production. Plaintiffs reason that because cumulative profitable production ceased for 90 days at a time, the cessation of production clause operated to interrupt the secondary term of the lease, relying on the following language from *Hoyt*:

> [ ] where, ... the primary term has expired and the effect of the [cessation of production clause] is to modify the habendum clause ... there is a cessation of production if the habendum clause requires production in paying quantities and such requirement is not met.

*Hoyt v. Cont'l Oil Co.*, *id.*, at ¶ 10, at 563. Thus, Plaintiffs argue that because the lease gives Defendants 90 days to make a profit, and Defendants failed to do so, the lease has expired by its own terms. The trial court agreed, giving judgment to Plaintiffs.

¶ 19 We find summary judgment was erroneous.

¶ 20 In the first instance, Plaintiffs have failed to allege, much less prove, when Blair 1-33 ceased production in order to trigger the cessation of production clause. Though such a date may be inferred when viewed in light of Plaintiffs' chosen 90-day spans, the evidentiary record does not bear this out. For instance, Plaintiffs allege one 90-day period of unprofitability began on July 18, 2012, when Blair produced 0.0 barrels of oil.[7] Yet, only one day before, on July 17, 2012, Blair produced 24.9 barrels, and before that, 57.3 barrels on July 4, and 58.2 barrels on July 3.[8] [9] Moreover, even after the 90-day period began, the well produced 23.2 barrels on July 31, interrupting the 90-day period of nonproduction in paying quantities required by *Hoyt*:

> On this point the record clearly demonstrates production in paying quantities was not obtained for an *uninterrupted* period far in excess of the 60-day provision in the lease executed by the parties.

*Hoyt*, *id.* at ¶ 10, at 563 (Emphasis added).

¶ 21 Next, we find the trial court's reliance on *Hoyt* and rejection of *Pack* was in error. *Pack* addresses Plaintiffs' argument:

> The lessors/mineral interest owners argue the term "production" used in this clause includes removal and marketing of the product. They would require the lessee to continually market the gas from the well, and any cessation of such marketing for a period of sixty days or more would result in termination of the lease. We cannot accede to such a constrained construction of the clause as it discounts the intended meaning of production as this Court has determined in numerous cases ... [t]he term "production" as used in the cessation of production clause must mean the same as that term means in the habendum clause. ... If we were to conclude that the term "production" as used in the cessation of production clause means removal and marketing of the product as the mineral interest owners assert, then after the primary term expires, the lessee must not only keep the well in working order so that it is capable of producing in paying quantities as would be required under our well-

---

6. R., Tab 5, Plaintiffs Motion for Partial Summary Judgment, November 26, 2013, p. 6, Exh. 4.

7. R. Plaintiffs Motion for Partial Summary Judgment, November 26, 2013, p. 3, ¶ 6, Exh. 4.

8. R. *id.* attached Exh. 4.

9. Further, during the August 1-October 29 span, production was had on September 12, October 14, 23, 24, and 28, albeit in small quantities.

settled understanding of the habendum clause, but gas would have to be removed and marketed in order to meet the requirements of the cessation of production clause. Any cessation of marketing for a sixty day period, under the lessors' interpretation of the clause, would constitute a violation of the clause resulting in termination of the lease. *Such a result ignores the express terms of the habendum clause which provide for the lease to continue after the primary term as long as the well is capable of production in commercial quantities regardless of marketing. ... Thus, the clause does not require the lessee to market oil or gas actually extracted from the well. If the well was capable of production in commercial quantities at all times, but for a short period had less than commercial quantities marketed from it, the lessors would require the lessees to begin drilling operations for another well that under the facts would be unnecessary and uneconomical. Contrary to the argument of lessors and the decision of the trial court, Hoyt v. Continental Oil, supra, and French v. Tenneco Oil Co.,* 725 P.2d 275 *(Okla.1986), do not support termination of the lease under the cessation of production clause.* ... The trial court in the case at bar mistakenly concluded that "production in paying quantities" required the wells to be making a profit during the relevant months. Neither *Hoyt* nor *French* require such.

*Pack,* at ¶¶ 12-17, at 327-29 (emphasis added).

¶ 22 Unlike the well in *Hoyt,* which failed to produce in paying quantities following its initial term, the production surrounding the Blair well more closely resembles that of *Pack.* The cessation of production clause did not spring into operation simply because "the well was capable of production in commercial quantities at all times, but for a short period had less than commercial quantities marketed from it ..." *Pack, id.*

## CONCLUSION

¶ 23 We therefore hold the Plaintiffs have failed to show they are entitled to summary judgment, but Defendants were so entitled.

The trial court's order is reversed and the matter is remanded to the trial court with directions to enter judgment for Defendants.

¶ 24 **REVERSED AND REMANDED WITH DIRECTIONS.**

WISEMAN, P.J., and FISCHER, J., concur.